## BOSLER, ET, Plaintiff-Appellee, v SANDERSON, ET, Defendants, and NETZORG, Defendant-Appellant.

Ohio Appeals, Second District, Montgomery County.

No. 1923.   Decided June 20th, 1947.

James S. Jenkins, E. H. & W. B. Turner and Clinton S. Courson, all of Dayton, for plaintiff-appellee.

Estabrook, Finn & McKee, Dayton, for defendant-appellant.

### OPINION

By MILLER, J.

This is an appeal on questions of law from the Court of Common Pleas of Montgomery County, Ohio. Edwin Best Bosler, plaintiff-appellee, as one of three trustees under a deed of trust, sought a declaratory judgment of the invalidity of a purported lease of real estate entered into in the year 1942, upon the ground that the two co-trustees could not exercise

the power to lease conferred jointly upon all three trustees by the trust deed. Joined as defendants were his two co-trustees, the grantors of the trust deed, all living beneficiaries under the trust deed, and the defendant-appellant, Sidney M. Netzorg, claimant under lease of trust real estate, executed in 1942 by the two co-trustees, but not by the plaintiff-appellee.

The defendant-appellant filed an amended answer and cross-petition and prayed that the trial court declare the purported lease valid. The trial court found in favor of the plaintiff-appellee, declared the lease invalid and dismissed the defendant-appellant's cross-petition. From this judgment the defendant-appellant, Sidney M. Netzorg, prosecutes this appeal, all other parties defendant having failed either to perfect or to join in this appeal.

The petition contained the formal averments and the allegation that only two of the three surviving and successor trustees executed and delivered the lease and alleged verbatim the trust deed and the purported lease. The defendant-appellant admitted the trust deed and the purported lease entered into in 1942, and, in addition to the formal averments, that only two of the three surviving and successor trustees executed and delivered the purported lease. The various defenses consisted of a general denial, alleged the sufficiency of the signatures, the payment of rent and the acceptance of the same by the trustees, and in so doing that the lease has been ratified by all the trustees, and that they are estopped from challenging the validity of the lease.

The amended cross-petition alleges breach of covenant and prays for damages.

The plaintiff-appellee's amended reply pleads the statute of frauds.

The trust deed referred to in the petition, entered into on June 14, 1934, and in which the defendants, Ida Best Bosler, Etta Best Bishop and Florence Best Phillips, created an irrevocable trust, conveyed to the three co-trustees the real estate which is the subject of the lease. Each of the grantors, all sisters, named one of the original three co-trustees as a representative of her family group, and the trust deed expressly provides for the nomination of a successor trustee by the family group losing its representative by death, resignation or removal, making it mandatory that "* * * our trustees shall be so constituted and selected that each of the three family groups have a representative * * * ." The trust deed does not expressly empower any less than all three co-trustees to act on behalf of the trust, but does expressly provide that the trustees

shall have the power to sell, lease, transfer or mortgage any part of said property. It expressly exonerates the trustees from "liability and responsibility to the beneficiaries" for the consequences of the trustees' exercise of the powers conferred, if such powers are exercised in conjunction with the written consent of "* * * two of the grantors (two or more being alive) or * * * of the surviving grantor (two grantors being dead), * * *. Strangers dealing with the trustees need not see that such consent has been obtained and so far as such strangers are concerned, the acts of the trustees shall be final and conclusive."

After providing that the trustees always shall be so constituted and selected that each of the three family groups have a representative, the trust deed further provides:

"* * * The trustees herein named, together with any successors * * *, shall have the absolute and final right to deal with strangers to the trust and the strangers so dealing need not look behind the act of the trustee(s). And all instruments of conveyance or otherwise, affecting the trust property, properly signed and attested and acknowledged by the trustees shall be as good a conveyance as though signed, attested, and acknowledged by the grantors herein."

The trust deed also provides that the proceeds of any sale of the trust real estate shall be divided into three equal parts and shall "become three separate shares or estates," and thereupon it

"* * * shall no longer be necessary for three trustees to administer the whole. On the contrary, we direct that * * * a trustee be selected by each family group to handle exclusively, the trust share belonging to that group. * * * The three trustees * * * shall deliver the three trust shares to the three trustees selected for the representative family shares and the receipt of such trustee shall be a complete acquittance and discharge of the obligation of the three trustees acting at such time for the whole estate."

The purported lease referred to in the petition bears the date of May 23, 1942, and is for a term of 33 years. The annual rental throughout the entire period is $12,000.00 plus four per cent of the annual gross sales in excess of $300,000.00. This lease was never executed by the plaintiff-appellee or his mother although they were mentioned therein, and in the signatory

clause lines were apparently reserved for their signatures.

After defining all three trustees as lessors it concludes as follows:

"Lessors guarantee that they have full and complete power and authority to make and execute this lease under the provisions of the trust agreement hereinbefore referred to."

The record discloses that in November, 1936, all three co-trustees jointly with all three grantors, executed and delivered a lease of the trust real estate to Virginia Dare Stores, Inc., for a term of ten years from February 1, 1937, to January 31, 1947, with an option to the lessee to renew for an additional term of ten years. The annual rental under the lease was $12,000.00 for the first year and $15,000.00 thereafter for the next nine years, and $17,500.00 during the renewal term. The defendant-appellant executed this lease on behalf of the lessee as its president.

The Virginia Dare Stores, Inc., the lessee named in the 1936 lease, operated a store in the leased premises from February 1, 1937, to the end of 1938, thereafter going into bankruptcy and undergoing a reorganization, after which it was not an operating company. Thereafter several successive corporations were formed which were wholly owned subsidiaries of Virginia Dare Stores, Inc., and which conducted the business. The annual rental paid under the 1936 lease was $12,-000.00, although the lease called for more than this amount, and one year a lesser amount was paid.

In 1936 the defendant-appellant owned the controlling stock and was president of the Virginia Dare Stores, Inc., and continued to own such controlling stock interests. With the corporate lessee in default in rent under the 1936 lease and the lessee thereunder having ceased to be an operating company, the defendant-appellant endeavored in April, 1942, to negotiate a new lease. Apparently this new lease was to supersede the obligations of the then subsisting 1936 lease which then had almost five years more to run. As a result of the defendant-appellant's efforts a new lease upon the same premises was executed by the plaintiff-appellee's two co-trustees, two of the three living grantors, and the defendant-appellant, individually. This new lease was signed sometime during the month of May and became effective June 1, 1942. On this same date the plaintiff-appellee filed an action against

his two co-trustees to construe the trust deed and to enjoin the two co-trustees from delivering the purported lease. There was no visible change as to the possession or occupancy of the premises on June 1, 1942, or at any time thereafter, it having always been a Virginia Dare Store.

From the time Virginia Dare Stores, Inc., took possession of the premises in February, 1937, to the end of May, 1942, the rent was paid by checks of the Virginia Dare Stores, Inc. Under the purported new lease the rent for the months of June, July and August, 1942, was paid by cashier's checks of The Sterling National Bank and Trust Company of New York City. These checks were endorsed on the back, "Payment rental, June (July), (August) 1942, 33 North Main Street, Dayton, Ohio." From September, 1942, up until the date of the trial, the rent was paid by checks from the Virginia Dare Stores, Inc. The annual rental paid before as well as after the purported 1942 lease was $12,000.00, except for one year. All the checks given in payment carried on them only the statement "Payment of rent," and did not designate under which lease the payments were made. This, therefore, became a question of fact for the determination of the Court, as the right of jury trial was waived.

The assignments of error may be epitomized as follows:

1. The judgment is contrary to law and against the manifest weight of the evidence.

2. The Court erred in admission and rejection of evidence.

3. The Court erred in overruling the defendant-appellant's motion for leave to file a supplemental answer and amended cross-petition.

4. Other errors apparent on the face of the record.

The first assignment of error raises the question of the validity of the lease, since it was signed by only two of the three trustees and in event that we should hold that the signatures of all three trustees were necessary, did the plaintiff-appellee ratify it by accepting the rental payments and is he, therefore, estopped to deny his consent thereto? The trust deed gave the trustees power to lease the real estate on the following terms:

"With the consent of two of the grantors (two or more being alive) or with the consent of the surviving grantor (two being dead). * * * the trustees shall have the power to sell, lease, transfer or mortgage all or any part of said property * * * ; including the right to lease for any terms, irrespective of the term of the period of the trust; to execute and deliver

any proxies, powers of attorney or agreements that may be necessary or advisable in administering this trust. * * * "

Immediately following and as a part of the foregoing paragraph in which the power is conferred upon the trustees to lease the trust real estate, the trust deed provides:

"While the consent of the grantors as aforesaid is required of the trustees so far as liability and responsibility to the beneficiaries herein are concerned, strangers dealing with the trustees need not see that such consent has been obtained and so far as such strangers are concerned, the acts of the trustees shall be final and conclusive." .

After conferring additional powers upon the trustees, and after providing for the certification of a successor trustee, the trust deed further provides:

"* * * the trustees, herein named, together with any successors * * *, shall have the absolute and final right to deal with strangers to the trust and the strangers so dealing need not look behind the acts of the trustee(s). And all instruments of conveyance or otherwise, affecting the trust property, properly signed, attested and acknowledged by the trustees shall be as good a conveyance as though signed attested and acknowledge by the grantors herein."

By these provisions the trustees are given express power to lease the trust real estate, etc., to "strangers to the trust." The defendant is a stranger to the trust as he was in no way a party to the covenant or a privy thereto. See 40 Words & Phrases, (Perm. Ed.) 245. In the absence of statute or contrary direction in the trust instrument the powers of co-trustees are held jointly and can be executed only by their united action. The basis of this assumption is that the courts believe that such was the intent of the creator of the trust.
One who appoints several trustees to manage a trust is deemed to express a desire to get the benefit of the wisdom and skill of all in every act of importance under the trust.
Winslow v B. & O. R. R., 188 U. S. 646.
Sinclair v Jackson, 8 Cow. Rep. (N. Y.) 543.
Fairlawn Heights Co. v Theis, 133 Oh St 387.
Hoffman v Drury, 18 Abs 183, (Court of Appeals of Montgomery County).
Durell v Reynolds, 16 N. P. (N. S.) 486, 487.

Pleasant Ridge v Harrison, 42 W. L. B. 185.

1 Restatement, Law of Trusts, Sec. 194, page 516.

1 Perry on Trusts, (7th Ed.) 684.

**40 O. Jur., Trusts, Sec. 169, p. 429.**

3 Bogert on Trusts & Trustees, Sec. 554, p. 440.

In **Fairlawn Heights v Theis, 133 Oh St 387,** the plaintiff sold a lot to the defendant and payments were to be made in installments with the deed to be delivered to the purchaser upon the payment of the last installment upon the purchase price. The defendant defaulted and the plaintiff sued for the unpaid balance of the purchase price after tendering a deed and a release of the loan from a blanket mortgage held by a Note Holder's Protective Committee. This release was signed by only two of the three members of the committee. In holding that the members of the committee were co-trustees and that the release of the mortgage executed by only two of the three trustees was ineffectual and that, therefore, plaintiff had failed to tender good title to the purchaser, the Supreme Court said at page 394:

"In the absence of anything showing the power or authority of these three members of the committee, they must be confined to a joint performance of power requiring the exercise of authority by the action of all of them. When the control of a private trust is vested in co-trustees, they all form but one collective trustee and must act together * * * we consider this principle controlling here."

In the case of **Hoffman v Drury, et al., 18 Abs 183,** this Court said:

"In the case of a private trust, as distinguished from a public or charitable trust, where there are several trustees, and all have accepted and are exercising the office and power, interest and authority are equal and undivided; they cannot act separately but must act as a unit except where authority to act is given to a majority of the trustees by statute, or by the instrument granting the trust, * * *"

A review of the decisions in this state establishes the principle that unless the instrument expressly provides for the exercise of the co-trustees' powers by a less number than all the qualified and acting co-trustees, it will be deemed that the grantor of the trust intended to get the benefit of the wisdom

and skill of all his co-trustees in every act of importance under the trust instrument. The granting of a lease which comprises all of the trust real estate is certainly one of importance. See Winslow v B. & O. R. R. Co., 188 U. S. 646. An examination of the trust deed itself is convincing that the grantors intended that the power to lease should be executed only by the united action of all three trustees. Each of the grantors appointed one of the three trustees as a representative of her family group and the trust deed especially requires that "* * * our trustees shall be so constituted and selected that each of the three family groups have a representative * * * ."

With respect to the continuation of the trust so far as proceeds of sale of the trust real estate are concerned, the trust deed provides:

"Upon the sale of the property * * * it shall no longer be necessary for three trustees to administer the whole."

Further evidence of intent that all action with respect to the trust real estate be taken jointly by all three trustees is to be found in the provision for the majority of the three living grantors to exercise the reserved power to consent on behalf of all three grantors, but significantly no similar provision is made in the trust deed for any less number than all three trustees to act upon behalf of the "trustees."

Upon the basis of the foregoing we hold that the grantors intended that each of the three family groups should have a voice in its management of the trust real estate, speaking through its "trustee." The defendant-appellant contends, however, that even though we find that it was necessary for all three trustees to sign the lease that the plaintiff-appellee has ratified the lease by accepting the monthly rental payments and also that the doctrine of estoppel has application. The record discloses that the plaintiff-appellee did accept the monthly payments each month, but he denies that the payments were made under the terms of the 1942 lease but that they were made in accordance with the 1936 lease. This, therefore, becomes a factual question, and we find that there is substantial testimony and evidence in the record to substantiate the plaintiff's claim, so we cannot say that the judgment is against the manifest weight of the evidence, the trial court having found that the payments were not made under the 1942 lease. The entering into possession of the property under the 1942 lease also became a factual question as from

all outward appearances there was no apparent change in the occupancy of the building. At all times from the year 1937 up until the time of the trial the storeroom was occupied by a Virginia Dare Store.

Another assigned error is that the Court erred in overruling defendant-appellant's motion for leave to file a supplemental amended answer and cross-petition. The motion for leave to file a supplemental cross-petition was filed August 26, 1946, four weeks after the trial court rendered the decision in favor of the plaintiff-appellee. The copy of the supplemental cross-petition attached to the motion alleges that the trustees accepted rent checks for the months of February through July, 1946, (after the trial) under the purported 1942 lease, "well knowing that said rental payments were tendered under the said lease and under said lease only." This is a reiteration of the form of allegations appearing in the third and fourth defenses of the defendant-appellant's amended cross-petition. The defendant-appellant failed to introduce sufficient evidence to support the allegation that the plaintiff-appellee knew the rental checks were tendered, for thirty-nine months prior to the trial, under the purported 1942 lease, and not under the 1936 lease. Thus the allegations of the plaintiff-appellee's knowledge after the trial was no more susceptible of proof by defendant-appellant than that prior to the trial. The stipulation entered into and the evidence offered by the defendant-appellant in support of the motion shows that the rental checks remitted and accepted after the trial are of the same tenor as those remitted and accepted before the trial, and upon which the Court rendered its decision. The evidence which the defendant-appellant would have submitted had leave been granted and which was offered in support of the motion does not differ from that previously submitted to the Court at the time of the trial.

We are of the opinion that the Court did not abuse its discretion in denying the motion for leave to file the supplemental petition after the trial of the case and the rendition of the Court's decision. It seems apparent that the defendant-appellant cautiously refrained from making any commitments as to which lease any of the monthly payments were to be applied. The checks uniformily carried the endorsement "Payment of rent, Dayton Store." It is true the plaintiff-appellee knew that the defendant-appellant was claiming under the 1942 lease and it is true that the defendant knew that the plaintiff-appellee did not recognize the 1942 lease and was claiming under the 1936 lease. Under such circumstances it

would seem that the defendant had a purpose in not making known to which lease he wanted the payments applied. He wanted to be in a position to blow both hot and cold. In other words, if he should fail to sustain his 1942 lease, than he could urge the payments were made under the 1936 lease. In either event he would not forfeit the right of possession of the Dayton store. Had he made known his intentions it would have been the duty of the plaintiff-appellee to apply the payments as directed. Union National Bank v Cleveland, 10 O. C. C. 222.

We think the record sustains the trial court's conclusion that the plaintiff-appellee accepted no payments under the 1942 lease. No unfavorable inference can be drawn against the plaintiff-appellee from the fact that he held the series of checks for the months of June, 1942, through April, 1943, and did not cash them until April 27, 1943. It was his privilege to cash them at his convenience, which he no doubt did, after thoroughly investigating the legal consequences in so doing.

We find no prejudicial error in admission and rejection of evidence or any other errors apparent upon the face of the record, and the judgment is ordered affirmed.

WISEMAN, PJ, and HORNBECK, J, concur.