HUNTINGTON NATIONAL BANK et al., Appellees,

v.

WOLFE, Appellant;  May, Appellee.

HUNTINGTON NATIONAL BANK et al., Appellees,

v.

WOLFE et al., Appellees;  Wolfe, Appellant.

[Cite as *Huntington Natl. Bank v. Wolfe* (1994), 99 Ohio App.3d 585.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

Nos. 93APF09–1312, 93APF09–1313.

Decided Dec. 29, 1994.

586

*Vorys, Sater, Seymour & Pease, Richard R. Stedman* and *David S. Cupps,* for appellees Huntington National Bank, John Walton Wolfe, Marilyn May, Amy R. Wolfe, et al.

*Isaac, Brant, Ledman & Teetor, Michael R. Szolosi* and *Barbara L. Kozar,* for appellant Elisa Wolfe.

---

WHITESIDE, Presiding Judge.

Defendant Elisa Wolfe ("defendant"), appeals from judgments of the Probate Division of the Franklin County Court of Common Pleas ("probate court"), in these two actions for declaratory judgment and raises eight assignments of error,[1] as follows:

"1. The probate court erred in denying appellant Elisa Wolfe's motion for summary judgment and in entering final judgment that allowed a distribution in cash rather than in kind. See rulings on motions for summary judgment filed October 11, 1990 (hereinafter 'Summary Judgment Ruling') and final judgment filed August 23, 1993 (hereinafter 'Final Judgment').

"2. The probate court erred in failing to find that the co-trustees committed a breach of trust and breach of fiduciary duty and erred in allowing the co-trustees to carry out the sale of appellant Elisa Wolfe's trust assets. See 1991 Order and Final Judgment.

"3. The probate court erred in failing to find that the co-trustees abused their discretion in deciding to cash out Elisa. See 1991 Order and Final Judgment.

"4. The probate court erred in declining to permit the rebuttal testimony of Charles Tell. See Tr. pp. 434–439; 448–450.

"5. The probate court erred in its rulings on burden of proof in the valuation phase of this litigation. See Findings/Conclusion filed July 6, 1993 (hereinafter '1993 Order') and the Final Judgment.

"6. The probate court erred in failing to find that the co–trustees abused their discretion in adopting the valuation process. See 1993 Order and Final Judgment.

---

1. Although defendant sets forth eight assignments of error, only five issues for review are set forth and the argument portion of the brief has seven numbered parts, which are not directly related to the assignments of error. The discussion herein relates to the seven portions of the brief in the argument portion. In this respect, the brief does not comply with App.R. 16(A).

"7. The probate court erred in failing to specifically disapprove the valuation of Elisa's stock on the grounds that it results in a fundamentally unjust and inequitable distribution to Elisa. See 1993 Order and Final Judgment.

"8. The probate court erred in adopting the co–trustees' proposed final judgment. See 1993 Order and Final Judgment."

Plaintiffs, Huntington National Bank ("Huntington") and John Walton Wolfe [2] ("J.W. Wolfe"), brought this action in the probate court seeking a declaration of their authority as co-trustees of two trusts established by the testator, Edward T. Wolfe, Jr., in his will, the action being filed in the estate proceedings, and the testator having died on January 25, 1975, in an airplane crash. Originally, the two trusts had been drafted as *inter vivos* trusts but were never fully executed. However, the will made bequests to the two trusts and, with the consent of all parties, the probate court incorporated, *inter alia*, these two trusts into the will. J.W. Wolfe was named as executor under the will and as co-trustee of the trusts. The Huntington National Bank was named as successor co-trustee and co-administrator with will annexed ("WWA") of the estate because the bank named as co-trustee and co-administrator declined to accept appointment.

The bequest to trust number 2 in the will was of a specific monetary amount. The trust provision was that this trust was to be held for the benefit of defendant and her full brother, Eddie, in equal shares payable at the discretion of the co-trustees. The bequest to trust number 3 was of the residue and remainder of the estate, with the testator's four children being the beneficiaries of the trust, namely, defendant, her brother Eddie, and their half-sister Amy and half-brother Andrew. There was also a trust number 1, which is not involved in this litigation.

Defendant's brother Eddie died without issue on May 20, 1985. Trust number 2 provided that, in the event of the death of one of the two beneficiaries before final distribution, the share of the deceased's child should be added to the share established for the surviving child, the trust providing for division of the *res* into such shares upon the eldest child's attaining the age of twenty-one. The trust also provided that, when a beneficiary attained the age of twenty-five years, he or she could request one-half of his or her respective shares to be paid to him or her and, upon attaining the age of thirty, could request any or all of the assets of his respective share be paid to him or her.

---

**2.** Subsequent to oral argument and submission of this case, the individual trustee died. Although App.R. 29 suggests a substitution is required for continuation, upon notification from the court, the parties have agreed that no substitution of a successor individual trustee is required and that the case proceed with only the corporate co-trustee as appellee. We have considered and determined all issues raised by the appellant without consideration of whether some of the issues may have been rendered moot by the death of the individual trustee, since the parties have not raised that question.

Trust number 3 contained similar provisions with respect to the four beneficiaries as to the effect of the death of one of the beneficiaries without issue prior to distribution and the ability of the beneficiaries to make requests for payment of principal upon the attaining of the age of twenty-five and thirty. However, the evidence indicates that no beneficiary made such a request. Both trusts contained similar provisions as to termination of the trust, Section 4.04 of trust number 3 providing:

"Anything to the contrary notwithstanding, the trusts created herein shall terminate not later than twenty-one (21) years after the death of the last survivor of the Grantor, and his children who are living at the date this Trust Agreement is signed, and if any trust created herein has not sooner terminated, the Trustees at said time shall pay over, convey and deliver the remaining trust assets then in their possession in equal shares to the persons then entitled to receive the income therefrom."

Trust number 2 contains a similar provision.

On June 6, 1985, the co-trustees "pursuant to the powers granted to the Trustees by Subparagraphs (b) and (f) of Paragraph 3.01 of Article III of the Trust Agreement" determined that distribution of the assets of the share of defendant Elisa Wolfe should be made in cash and that, to accomplish such cash distribution, "the interest of such share now held or hereafter acquired in the Dispatch Printing Company and the Dispatch Printing Company voting trust, the Ohio Company and Radio Ohio, Inc., shall be sold at the fair market value thereof as determined by competent, independent appraisers." At the same time, the co-trustees for consideration executed options to the Dispatch Printing Company, the Ohio Company, and Radio Ohio, Inc., to acquire such interest. The trustees made a similar determination as trustees of trust number 2 with respect to the interests of defendant and her brother Eddie and executed a similar option agreement with the three companies.

The trustees then brought these two actions in the trial court, case No. 93APF09–1312 involving trust number 2, and case No. 93APF09–1313 involving trust number 3. All four beneficiaries were named as parties to case No. 93APF09–1313, involving trust number 3, since one of the declarations sought was whether the share of Eddie (determined to be reduced to cash) should be paid into the shares of the other three beneficiaries or paid to his estate. This matter apparently was settled, and a partial final judgment entry was entered on December 11, 1987, which included an irrevocable waiver of appeal. Thereafter, the case proceeded only with respect to defendant, as did case No. 93APF09–1312, the two cases being consolidated for hearing and disposition both in this

court and in the probate court.[3]   Also, a protective order was entered in the trial court and in this court with respect to the briefs, transcripts, and certain other documents which contain confidential information.

The trial of this case was bifurcated into two issues: (1) whether the co-trustees abused their discretion and breached their fiduciary duties in determining to make the distribution of her share to defendant in cash after selling the assets, rather than distributing the assets in kind; and (2) whether the option procedure and resultant value for the shares was fair and equitable and consistent with the co-trustees' fiduciary duties.   The trial of the first phase began on April 23, 1991, resulting in findings of fact and conclusions of law favorable to the co-trustees on June 26, 1991.   The second phase of the bifurcated trial was conducted on October 1, 1992, and findings of fact and conclusions of law were entered on July 6, 1993, and a final judgment was thereafter entered, resulting in a timely appeal to this court.

■  By the first assignment of error and the first argument, defendant contends that the probate court erred in overruling her motion for summary judgment and in entering a final judgment declaring that a distribution in cash, rather than in kind, was appropriate, stating as an issue under that assignment of error whether, as sole remaining beneficiary, defendant may compel a distribution in kind to the trust assets.   This contention is predicated primarily upon the Restatement of the Law 2d, Trusts (1959) 198, Section 346, which provides that:

"Although by the terms of the trust the trustee is authorized or directed to convert trust property *on the termination of the trust,* the beneficiary if not under an incapacity can require the trustee to transfer the trust property to him without converting it."   (Emphasis added.)

These powers are sometimes referred to as the power of "conversion," that is, converting property to cash and the right of "reconversion," the right of the beneficiary to insist upon being paid in kind, the assets themselves, rather than the cash proceeds from the sale of the assets.   In rejecting this contention upon defendant's motion for summary judgment, on October 11, 1990, the trial court stated in part:

" * * * Section 346's applicability is concerned with a trustee's powers that are limited on termination to distribution in legal tender.   Section 346 has a very narrow application, and is not applicable in the factual situation as presented by this case.   The trust powers here asserted by the trustee are broad general powers for the management of the trust, not merely exercisable on termination.

---

**3.**   The judge of the probate court recused himself, and a probate judge from another county was assigned to and did hear and determine the cases.

To apply Section 346, as urged by the Defendant, would fly in the face of the first rule of trust law, that the settlor's intent must be given full deference. The settlor's intent is clear. The trustee, in Trusts No. 2 and No. 3 of Edgar Wolfe, has the power to distribute, under the circumstances of this case, in legal tender."

In findings of fact of June 26, 1991, upon the first phase of the bifurcated trial, the trial court stated in findings of fact numbered 2 and 3 that:

"2. The Co–Trustees have chosen to distribute in cash to Elisa Wolfe, daughter of Edgar Wolfe and a beneficiary under the Trusts.

"3. The Co–Trustees have not made cash distributions, but have made in-kind distributions, to the two other living beneficiaries, children of the settlor and half-brother and sister of Elisa Wolfe."

In the June 26, 1991 findings of fact and conclusions of law, at page 5, following that trial, the probate court stated, in part:

" * * * It is very apparent from the circumstances of the case at bar that the settlor must have understood that his Co–Trustee would take into consideration the interest of the corporation as well as the interest of the beneficiary in making any decisions concerning the family corporations' stock held by the Trusts. It is apparent that the settlor Edgar T. Wolfe's intent was to allow both the interest of the corporation of which his Trust held stock to be considered along with the interest of his beneficiaries. This Court is bound by the intent of the settlor. * * *

"The question is, in this case, in considering the interests of both corporations and beneficiaries, did the Co–Trustees abuse their discretion by 'cashing out' the defendant Elisa Wolfe? That is a judgment call. The Co–Trustees, specifically John W. Wolfe, appear to be concerned with Elisa Wolfe's ability to manage the stock in a way that would be hostile or do damage to the management, corporation, and, ultimately, to the interests of all of the Wolfes, including Elisa. As to whether that is a correct analysis of what might occur, this Court is in no better position than the Co–Trustees to determine. Under those circumstances, a Court should not substitute its own judgment for that of the trustees. * * * The settlor provided for different interests, even possibly conflicting interests, to be considered in the management and distribution of trust assets. A court, under circumstances presented by this case, should not interfere and reverse a decision made by a settlor's designated trustees because conflicting interests have been weighed by those trustees."

Subsequent to the decision of the trustees to "cash out" defendant, and the day after commencement of this case, defendant, on July 11, 1985, acting through her counsel and referring to Sections 1.03(e) of both trusts, requested "immediate distribution in kind to Elisa Wolfe of all assets now held or to be received in the

future by both of the above-noted trusts." Two weeks later, under date of July 25, 1985, defendant on her own behalf made a similar request with respect to the distribution of assets for her share in the trust relative to her brother Eddie. The record does not clearly reflect when either of these letters was received, although the first letter contains the notation, "Hand Delivered." Section 1.03(e), relied upon by defendant in her demand, states in pertinent part:

"[T]he Trustees shall pay and distribute *in cash or in kind* to such child, upon his or her written request, any or all of the remaining assets of his or her respective share." (Emphasis added.)

Similarly, the trust provisions relied upon by the co-trustees in their determination to convert the assets to cash and make distribution in cash rather than in kind, are Sections 3.01(b) and (f), which read in pertinent part as follows:

"In addition to and not in limitation of the powers given by law, the Trustees shall have full power:

" * * *

"(b) to sell at public or private sale * * * any property, real or personal, at any time constituting a portion of said trust upon such terms and conditions as said Trustees shall deem wise;

" * * *

"(f) to enter into option or voting trust agreements and to consent to the reorganization, consolidation, liquidation, readjustment of the financial structure or sale of the assets of any corporation or other organization, the securities of which constitute a portion of said trust * * *."

The probate court correctly observed that the distribution here was not one made upon "termination of the trust" but, rather, was one made during the continuation of the trust under the general powers of the trustees, not the powers upon termination which are set forth in Section 4.04 of the trust agreement, *supra.* If applicable to Ohio, Section 346 of the Restatement, *supra,* would apply by its terms only upon termination of the trust. Even though the practical effect of the distribution to defendant may be to terminate the trust, this is not distribution upon termination of the trust by its terms. Defendant relies upon *Holt v. Lamb* (1867), 17 Ohio St. 374, and *Feiler v. Feiler* (1948), 149 Ohio St. 17, 36 O.O. 346, 77 N.E.2d 237, as supporting application of Section 346 of the Restatement. However, *Holt* involved not a trust but, instead, a remainder in real estate following the termination of a life estate. The life estate was created by a devise in a will, with a direction that, at the death of the life tenant, the property be sold and the proceeds divided among the testator's children. The Supreme Court held that, under such circumstances, "the children may elect at his death to take the land itself, or to have it sold for their benefit." However,

*Holt* was not an action by the remaindermen to have a conveyance in kind but, instead, was an action to have the real estate sold and the proceeds divided among them. The will had been set aside by a will-contest action, to which they were not made a party. As a result of a partition action (to which they were also not parties), the property was sold to a third person, who in turn sold it to the defendant Lamb, from whom the remaindermen sought to recover the property so that it could be sold and the proceeds divided among them.

*Feiler*, on the other hand, does not support defendant's contention, although it does cite *Holt*. Rather, the first paragraph of the syllabus of *Feiler* states:

"Where by the terms of a testamentary trust the legal title to real estate is in a trustee having the power of full management of the same and to pay the net income to certain beneficiaries, or to lease or sell the real estate in any manner and upon such terms as the trustee may deem sufficient * * * where the trustee has not sold the real estate and is exercising his power of management and payment of net income, such trust is live and active and not dry or one that has failed."

Similarly, the second paragraph of the syllabus of *Feiler* states:

"Where the existence of such a testamentary trust, by its terms, must not continue longer than 15 years, the beneficiaries * * * cannot successfully claim either the property or the proceeds of its sale, in lieu of the annuities provided, at least until either the 15 years have elapsed or the trustee has, in the exercise of his discretion, sold the property."

There is a statement in the opinion of *Feiler*, 149 Ohio St. at 27, 36 O.O. at 350, 77 N.E.2d at 242, that "[t]he doctrine of equitable conversion has been recognized in Ohio," and this is the reference to *Holt*. However, the opinion goes on to state, 149 Ohio St. at 27, 36 O.O. at 350, 77 N.E.2d at 242:

"It is obvious that the doctrine of equitable conversion, as interpreted by this court, is to the effect that such doctrine cannot be applied *until preceding estates have been ended.*" (Emphasis added.)

Here, the probate court applied that doctrine and found that the trust had not terminated by its terms. In the opinion of *Feiler*, the court, continuing, 149 Ohio St. at 27, 36 O.O. at 350, 77 N.E.2d at 242, stated that, in the absence of fraud or abuse of discretion on the part of the trustee:

"[T]he court cannot terminate the trust * * * nor can the beneficiaries of the will do so even if they were in complete agreement as to such a course. Neither a court nor beneficiaries can make a new and different will for the testatrix."

It is this doctrine upon which the trial court relied, finding that the intent of the testator was of paramount importance under the circumstances herein

involved and that the intent of the testator had been carried out through the action of the co-trustees in selling the interest in the three family corporations to those corporations and distributing the cash proceeds to defendant, rather than the stock interests themselves as she requested only after the options to sell had been executed. The first conclusion is supported by Section 3.01 of the respective trusts, each of which confers upon the trustees *"full power"* to sell any property at public or private sale constituting a portion of either trust "upon such terms and conditions as said Trustee shall deem wise." As the plaintiff trustees point out, it is significant that the testator-settlor chose to use the words "full power," rather than simply the word "power."

As stated in *Hopkins v. Cleveland Trust Co.* (1955), 163 Ohio St. 539, 549, 56 O.O. 442, 446, 127 N.E.2d 385, 391:

"[W]hen a settlor reposes his discretion in a trustee, he does so because he desires the honest judgment of the trustee, perhaps even to the exclusion of that of the court. * * * "

The first paragraph of the syllabus of *Hopkins* states that:

"So long as a trustee executes the trust in good faith and within the limits of a sound discretion, a court of equity will not interfere with that discretion or undertake to substitute its discretion therefor."

The word "full" connotes complete or entire without limitation. It connotes that the settlor intended the trustees to have the same type of power to sell property making up the trust *res* as the settlor himself would have. Such power terminates only when the trust terminates. The trial court properly found that the trust had not terminated at the time the trustees exercised the full power of sale vested in them by Section 3.01 of the respective trusts. Section 346 of the Restatement, *supra,* comes into play only with respect to a power of sale existing following termination of the trust. Since the trust had not terminated at the time the power was exercised by the trustees in the instant case, Section 346 of the Restatement has no application, even if it reflects the controlling Ohio law. Accordingly, the probate court did not err in overruling defendant's motion for summary judgment or in entering final judgment giving effect to the trustee's determination to sell the corporate stock to the respective corporations under the option agreement and to make distribution to defendant in cash, rather than in kind. Therefore, the first assignment of error is not well taken.

By her second assignment of error and second argument, defendant contends that the probate court erred in failing to find that the co-trustees committed a breach of trust and breach of fiduciary duty and erred in allowing the co-trustees to carry out the sale of the corporate stock representing her interest in the trust *res*. Under this assignment of error, defendant makes three

contentions: (1) that the co-trustees violated a duty of loyalty to her; (2) that the co-trustees breached their duty of good faith in their dealing with respect to her; and (3) that the individual trustee's capacity as a shareholder, officer and director of the companies and his personal interest in the sale of the stock to those companies conflicted with his duty as a trustee to her. As the trial court stated in its findings of fact of June 26, 1991, at pages 4–5:

"Edgar T. Wolfe, Jr. was fully aware of his brother's interest in the closely-held family corporations. Yet he chose to nominate his brother, John W. Wolfe, as Co–Trustee of trusts whose primary assets were stock in those same corporations. In addition, under provisions of the Trusts and his Will, Edgar provided his Co–Trustees with wide discretion as to selling that stock or distributing it to the beneficiaries. Included within that wide discretion was the possibility of selling the Trust's stock back to those corporations of which John W. Wolfe was part of the management. It is very apparent from the circumstances of the case at bar that the settlor must have understood that his Co–Trustee would take into consideration the interests of the corporation as well as the interest of the beneficiary in making any decisions concerning the family corporations' stock held by the Trusts. It is apparent that the settlor Edgar T. Wolfe's intent was to allow both the interest of the corporation of which his Trusts held stock to be considered along with the interest of his beneficiaries. This Court is bound by the intent of the settlor. * * *

" * * * The settlor provided for different interests, even possibly conflicting interests, to be considered in the management and distribution of trust assets. A court, under circumstances presented by this case, should not interfere and reverse a decision made by a settlor's designated trustees because conflicting interests have been waived by those trustees."

Also, it must be pointed out that the settlor did not give sole discretion to his brother, the individual trustee, but also provided for a corporate trustee, which did not necessarily have the same conflicting interest as his brother would have. However, even in the original designation of the corporate trustee, the settlors designated one of the corporations whose stock constituted a substantial portion of the trust estate, which corporation, a bank, declined to serve as trustee, resulting in plaintiff Huntington National Bank being the corporate trustee. Thus, there is a built-in safeguard against any improper resolution of conflicting interests by the individual trustee through the requirement that the corporate co-trustee also agree. Under such circumstances, the mere existence of the conflict, known and anticipated by the settlor, does not disqualify the individual co-trustee from participating in decisions regarding the trust with respect to which, arguably, the individual trustee may have conflicting interests. The only requirement is that, under such circumstances, the individual trustee having conflicting

interest exercise the judgment in good faith. There is nothing here to indicate that the individual trustee, J.W. Wolfe, did not exercise his judgment in good faith in making the decisions with respect to the sale of the stock to the companies and distribution of cash to defendant.

In addition, as indicated above, the corporate trustee, Huntington National Bank, concurred in such determination. The corporate trustee has no such conflicting interest. The trial court did not abuse its discretion in finding that the co-trustees did not breach any duty owed to defendant, in determining to sell the stock to the companies and make distribution of her share in cash.

Defendant has demonstrated no breach of duty in this respect, the only duty being one of fair treatment. She has demonstrated no reason for desiring to have the stock, rather than the cash equivalent, and has not demonstrated any harm or prejudice she sustains as a result of having cash instead of the stock. There was evidence, on the other hand, suggesting that she might be more benefitted by the cash in that her annual income should be substantially greater. The only "harm" she suggests may exist is the present realization of a capital gain resulting in an immediate tax liability, which might be deferred if the distribution were in kind, rather than in cash.

■ However, defendant contends that she need not prove that the conflict was prejudicial to her, citing *Manchester v. Cleveland Trust Co.* (1953), 95 Ohio App. 201, 53 O.O. 152, 114 N.E.2d 242, wherein it is stated at 212, 53 O.O. at 157, 114 N.E.2d at 248, "Undivided loyalty of the trustee towards the *cestui que* trust is incompatible with a conflict of interest." However, it must be noted that, in *Manchester,* the trial court dismissed the case upon motion at the conclusion of plaintiff's evidence, and the question determined was whether or not that evidence presented a *prima facie* case, not whether the final determination was required to be in favor of the beneficiaries. The court indicated that such evidence "made a *prima facie* case" and suggested the beneficiaries would be entitled to some form of equitable relief at the conclusion of the case. In that case, moreover, there was a corporate trustee, one of the members of the board of directors of which also held a dominant position with the company whose stock was the dominant assets of the trust. Such director was empowered to vote the stock and allegedly did so in a manner which furthered his personal interest in selling corporate stock for less than its true value. Nevertheless, the general legal principles are better stated in the dissenting opinion than in the more fact-specific majority opinion. Judge Fess, the dissenting judge, stated, 95 Ohio App. at 228, 53 O.O. at 164, 114 N.E.2d at 256:

" * * * But the mere possibility of influence, conflict of interest or divided loyalty is not sufficient to support either removal of a trustee or other relief. In every trust there is the possibility of a conflict of interest. A trusteeship offers

an opportunity, if not a temptation, to disloyalty and self-aggrandizement. * * * Therefore, a trustee must act with the utmost care, perspicacity and fair judgment."

In other words, even though there be a conflict of interest with respect to one of co-trustees, a beneficiary must prove that the conflict has resulted in prejudice to the trust, or to the beneficiary in order to be entitled to relief. The inherent conflict of the individual trustee did not disqualify him. Nor is there any evidence that said trustee acted improperly in making the determinations, even if it might be reasonable to make a different determination than that made by the trustees. In other words, the mere fact that a different judgment might also be reasonable does not render the reasonable judgment exercised by the trustees improper merely because of the existence of an inherent conflict of interest which was both anticipated and created by the settlor himself.

■ Another issue raised under this assignment of error relates only to the corporate trustee. Defendant contends that the corporate trustee breached its fiduciary duty to her because it (1) did not make independent inquiry as to the individual trustee's motivation and whether the distribution in cash was in defendant's interest, (2) did not independently explore other means of sale and the tax impact upon the distribution in kind, and (3) did not ascertain defendant's desires regarding the stock. Defendant also alleges that the corporate trustee did not exercise an independent judgment on her behalf.

Defendant Elisa Wolfe points out, citing *Bosler v. Sanderson* (1947), 81 Ohio App. 35, 36 O.O. 371, 74 N.E.2d 113, that the powers of co-trustees must be exercised jointly by united action and that each trustee is under a duty to the beneficiaries and the trust estate to participate in the administration of the trust and to use reasonable care to avoid a co-trustee's committing a breach of trust. Implicit in defendant's contentions is that the corporate trustee delegated its duties to the individual trustee. As we pointed out above, the existence of the corporate trustee is in part a "brake" upon the inherent conflict of interest created by the settlor with respect to the individual trustee.

Defendant points to the tenth paragraph of the syllabus of *In re Estate of Binder* (1940), 137 Ohio St. 26, 17 O.O. 364, 27 N.E.2d 939, which states that:

"Self-dealing or breach of good faith on the part of a trustee * * * cannot be excused on the ground that the instrument creating the trust and making him trustee gave him broad authority and unlimited discretion in the administration of the trust."

That rule of law, however, applies to "self-dealing or breach of good faith," not merely a conflict of interest. In other words, to be entitled to the principle of law announced by *Binder*, it was incumbent upon defendant to present evidence

showing either breach of good faith or self-dealing by the co-trustees. She has presented no such evidence with respect to either trustee.

Even assuming that, from the circumstantial evidence involved, such findings could be made by inference, the trial court, as trier of fact, did not make such inferences and, accordingly, did not make such findings. The trial court's determination is supported by appropriate evidence and cannot be properly interfered with by this court upon appeal. There is no basis upon which either self-dealing or breach of good faith could be found on the part of the corporate trustee with respect to the decision to sell the corporate stock and make the distribution in kind. The same is true with respect to the individual trustee as to any allegation of breach of good faith. However, arguably, there is an inference of self-dealing with respect to the individual trustee, since he also personally owns stock in the companies whose value might be affected by the purchase from the trust of the shares of company stock representing the interest of defendant in the trust estate. However, as pointed out by the trial court, this very type of "self-dealing" was inherent in the trust agreement in light of the circumstances involved. In fact, the settlor's will provided that the individual trustee could purchase the company stock from the estate with regard to payment of estate taxes. He did not do so, even though the amount he would have had to pay would have been a small fraction of the value of the stock representing defendant's share of the trust.

R.C. 2109.44, which prohibits self-dealing, makes an exception with respect to an individual fiduciary acting in his individual capacity if expressly authorized by the instrument creating the trust. Here, there is no dealing between either trustee and the trust but, instead, a transaction with a family corporation in which the individual trustee has an interest.

■ With respect to this assignment of error, defendant also contends that the co-trustees breached their duty to make every reasonable effort to sell trust assets at the best price obtainable. In its findings of fact and conclusions of law of July 6, 1993, the trial court found, at pages 8–9:

"[T]he evidence before the Court does not demonstrate that the trustees acted arbitrarily, unreasonably, from improper motives, or in bad faith in selecting or carrying out the valuation.

"[I]t is apparent that the appraisers selected were reputable, competent, and fully capable of arriving at a fair price. There was no evidence that the companies or trustees withheld information, obstructed, or attempted to influence the appraisal process. Much of the evidence produced by the beneficiary, mainly the testimony of a single expert, Mr. John Morton, dealt with the method for calculating value and what corporate information was necessary to arrive at

value. Mr. Morton's testimony was unconvincing that trustee's appraisal methods deviated from standard practices and resulted in an inaccurate appraisal. Mr. Morton's projection or appraisal value of the stock was questionable considering that the two times, outside of the current appraisal, that the stock in question was recently valued, 1982 for estate tax purposes and an actual sale in 1987, those valuations were considerably less than Mr. Morton's appraisal.

"Given the testimony and written evidence presented, the best conclusion this Court can render is that appraisers will disagree as to valuation and methods of appraisal. However, demonstrating that disagreement does not demonstrate or prove that the trustees acted with improper motives in an arbitrary and unreasonable manner, or in bad faith. In other words, this Court finds that the actions of the trustees in valuing the stocks to be sold was not a violation of their duties, as required by law, to the settlor and beneficiary."

Even assuming that a different conclusion could be reached from the evidence, there is sufficient, competent, credible evidence to permit the trial court as trier of fact to conclude that there was no impropriety in the valuation process. Independent appraisers were selected by the trustees and the companies. These two independent appraisal companies are nationally known and regarded. They produced detailed evidence as to the methodology they used in reaching an evaluation. Although defendant's expert reached a different conclusion and a higher value, the opinion of this expert was not known to the trustees at the time they made the agreement to sell the stock in accordance with the valuation made by the two independent appraisers. Furthermore, as pointed out by the trial court, there is some question as to the methodology utilized by the defendant's expert and the weight to be given his testimony. The trial court chose to give little weight to his testimony, and we cannot find that to be either error or an abuse of discretion. Accordingly, the second assignment of error is not well taken.

The third assignment of error and third argument raise similar issues, in that defendant contends that the trial court erred in concluding that the co-trustees did not abuse their discretion with respect to the decision to sell the stock to the respective companies and make a distribution to defendant in cash. Most of the issues pertinent to this assignment of error have been discussed in connection with the first assignment of error. As defendant points out, where a trustee has exercised power that the trustee has, but has abused its discretion in exercising that power, the court may interfere and set aside the action of the trustee. However, abuse of discretion exists only when one acts unreasonably, arbitrarily, or capriciously. The trial court expressly found that not to be the case. Defendant contends that, assuming the individual trustee to be correct in his belief that defendant has an inability to understand or manage money, it was an

abuse of discretion to distribute assets to her in cash, rather than in kind. We find no merit to this contention and are unable to follow any logic supporting it. Although perhaps more difficult with respect to a closely held corporation, the stock could be converted to cash after defendant acquired it. If she did so, she would have cash whether she sold all of the stock at once or sold it piecemeal to obtain cash for her desires. The evidence indicates that defendant should have a greater income from a cash distribution even after paying capital-gains taxes than she had enjoyed from the trust or would enjoy from the stock ownership. It was suggested that her annual income could be as much as doubled. Although not determinative, this tends to negate the abuse-of-discretion contention. Essentially for the reasons stated in connection with the first two assignments of error, the third assignment of error, likewise, is not well taken.

By the fifth assignment of error and fourth argument, defendant contends that the trial court erred in holding that the beneficiary had the burden to prove either a greater value or that the trustees acted arbitrarily. As defendant points out, this action was commenced by the co-trustees seeking an order from the court approving the decision to make the sale of stock and the terms and conditions of the sale. The trial court, however, refused to make such approval, finding that such approval of the court was not required for the trustees to proceed, stating in its findings of fact and conclusions of law of July 6, 1993, at page 5:

"As to the trustees' request for approval, this Court is without the authority to grant approval. The trustees do not allege that they are in doubt either as to their powers or that their actions violate standards of conduct imposed by the law. * * *

"It is also clear that when there is no genuine question or doubt as to either the law or the terms of the instrument, the same Court will not give advice to a trustee as to carrying out the duties of the trust. *Sherman v. Sherman* (1962), [95 Ohio Law Abs. 169], 32 O.O.2d 334 [202 N.E.2d 443]. This rule is especially applicable when the duties to be performed are discretionary. To do so would go against the basic stricture of trust law, that a court of equity will not substitute its judgment for that of the trustee. * * * *"

However, as noted by the trial court, defendant also "filed counterclaims averring conflict of interest and abuse of discretion on the part of the trustees, both in their decision to cash out the beneficiaries and the methods used in determining the value of the stock in question." With respect to such counterclaim, defendant would have the burden of proof, although plaintiffs might have the burden of going forward with the evidence upon certain issues within their special knowledge. As noted above, the trial court made specific findings that there was no improper conflict of interest and refused to substitute its judgment

for that of the trustees with respect to discretionary matters. Which party had the burden to produce evidence or the burden of proof does not appear to be determinative in light of the trial court's findings. The trial court considered all of the evidence and reached its conclusion accordingly.

■ With respect to the valuation of the stock, the trial court specifically noted that it made no difference whether the trustees or the beneficiary had the burden of proof because the evidence did not sustain defendant's contentions. In making such valuation, of course, the trial court considered credibility of witnesses and the weight to be given the evidence, which is a matter with which this court will not interfere absent an abuse of discretion by the trial court. Accordingly, the fifth assignment of error is not well taken.

By the sixth and seventh assignments of error and the fifth argument, defendant contends that the trial court erred in failing to find that the co-trustees failed to meet their burden of proof. We have discussed this issue above with respect to other assignments of error. As we have indicated, the trial court's factual findings are supported by competent, credible evidence of sufficient probative value to permit the trial court to make the factual findings.

As defendant points out, the plaintiffs offered the testimony of two appraiser witnesses. Defendant then attacks the testimony of each witness by nitpicking areas in which the witness was not as specific as defendant would like and arguing that there was no written appraisal report given at the time of the appraisal. Defendant then contends that her appraisal witness was much superior to the other two and points out that her witness attacked the appraisal of the other two witnesses, indicating that they were flawed for various reasons in his opinion.

■ Essentially, defendant attacks the trial court's factual finding by indicating that the weight of the evidence should have been determined differently. All of the evidence was before the trial court and, as we indicated above, the weight to be given evidence and the credibility of witnesses ordinarily are for the trier of fact, rather than for a reviewing court. There is merit to defendant's contention only in the sense that a trier of fact, the trial court in this instance, conceivably could have weighed the evidence in the fashion that defendant contends the evidence should have been weighed. However, the trial court did not do so, and it would be improper for this court to substitute its judgment as to the weight to be given the evidence, especially the testimony of the three appraiser witnesses, so as to reach a conclusion that the value of the stock is that given by defendant's expert, rather than that given by the plaintiffs' experts. In this regard, it must also be noted that the trial court did not make an exact determination of value but, instead, found no abuse of discretion on the part of the trustees in the

valuation process. We found this to be appropriate, noting that the trustees could not have been aware of the valuations placed by defendant's expert at the time they made their determinations and the agreement to sell the stock to the companies.

Nor do we find that the trial court was required to make an exact determination of the value of the stock. However, the trial court did specifically note that defendant's expert witness's testimony was "unconvincing" and that his "appraisal value of the stock was questionable." Accordingly, even if the burden of proof were upon the co-trustees, the trial court did not err in entering the judgment that was entered. Accordingly, the sixth and seventh assignments of error are not well taken.

The eighth assignment of error and sixth argument raise a similar issue, defendant contending that the trial court erred in adopting the co-trustee's proposed final judgment. Defendant had contended that the trial court judgment should read simply that:

"[P]laintiffs are not entitled to a declaratory judgment on that part of their prayers for relief (paragraph 3 of the complaint) seeking approval by the court of the terms, price and procedure for valuing the stock and such approval is hereby denied." (Defendant-appellant's brief, at 34.)

The judgment of the trial court, however, included a declaration that "[t]he Trustee's * * * selection of the procedures by which the shares will be valued and sold * * * is conduct permitted and appropriate under the Trusts * * *." The contention of defendant is that the trial court was inconsistent because it first found that approval is unnecessary and then gave approval. However, this is not what the trial court did. Rather, the trial court denied approval of the decision made by the plaintiffs to sell the stock and make distributions in kind and refused to determine the value of the stock but, instead, determined only whether the trustees were authorized to take the action they took and whether that action or the stock valuation constituted an abuse of discretion. Defendant contends that the final judgment is against the manifest weight of the evidence. However, for the reasons we have stated above, the evidence does support the final judgment reached by the trial court. What the trial court did state in its final judgment of August 23, 1993, was, in part:

"[T]he Trustees had and have discretionary authority to option and sell the shares of stock held by the Trusts for the benefit of Elisa Wolfe (the 'Shares'), had and have discretionary authority to determine the procedure by which such Shares will be valued and to determine the value at which such Shares will be sold, and had and have discretionary authority to distribute to Elisa Wolfe in cash, rather than in kind. * * *"

The court then found that such action of the trustees "is conduct permitted by and appropriate under the Trusts unless the Court finds and concludes that the actions of the trustees involved, involve or would involve a violation of one or more of the Trustee's fiduciary duties * * *." The final determination of the court was that "the actions of the Trustees were not, are not and will not be in violation of such duties * * *." Such determinations are consistent with the court's findings and are supported by the evidence as indicated above. The eighth assignment of error is not well taken.

■ By the fourth assignment of error and seventh argument, defendant contends that the trial court erred in refusing to permit rebuttal testimony of Charles Tell. Such testimony would have concerned some apparent negotiations between the parties, at which time it was proposed that the stock representing defendant's interest in the two trusts which are the subject of this action would itself be placed into a trust, and the testimony would be with respect to an article which had been proposed to have been inserted into such a trust had it been created, which would have given plaintiff J.W. Wolfe both the voting rights to such stock and the control over the voting of such stock. There had been some testimony upon this subject indicating that the article had been drafted by Richard Stedman at the request of defendant's former attorney, Charles Tell. He (Tell) would have testified that neither he nor defendant requested that the article be included in the proposed trust, which never was effectuated. As plaintiffs point out, this is, at best, a collateral matter. It did not bear directly upon the issues before the court. It merely would have created a conflict in the testimony as to who suggested a proposed amendment which had not been adopted, determination of which could have no effect upon the rights of the parties. Even assuming such evidence could be admitted, it was within the discretion of the trial court to exclude it. See *State v. Kehn* (1977), 50 Ohio St.2d 11, 4 O.O.3d 74, 361 N.E.2d 1330, *State v. Kirkland* (1984), 18 Ohio App.3d 1, 18 OBR 25, 480 N.E.2d 85, and *Mason v. Swartz* (1991), 76 Ohio App.3d 43, 600 N.E.2d 1121.

Defendant has not established that the trial court abused its discretion in excluding such evidence. There is no indication that the trial court considered the issue of any importance to the outcome of the case; rather, the indication is to the contrary. There is no indication that the trial court gave any weight to the testimony concerning who suggested the proposed amendment which was not effectuated to an instrument which was not the subject of this case and has no bearing upon the outcome of this case. Accordingly, the fourth assignment of error is not well taken.

For the foregoing reasons, all eight assignments of error are overruled, and the judgment of the Franklin County Court of Common Pleas, Division of Probate, is affirmed. Costs are assessed against defendant.

*Judgment affirmed.*

BOWMAN and TYACK, JJ., concur.