**WHITING et, Plaintiffs-Appellees, v. BRYANT, Defendant-Appellant, CLEVELAND TRUST COMPANY, Trustee, Defendant.**

Ohio Appeals, Eighth District, Cuyahoga County.

No. 23330.   Decided January 18, 1956.

Van Aken, Whiting, Arnold & Nash, for plaintiffs-appellees.

Arter, Hadden, Wykoff & Van Duzer, L. C. Wykoff, Walker H. Nye & Thomas V. Koykka, of Counsel, for defendant-appellant.

Richard F. Stevens, Baker, Hostetler & Patterson, for defendant The Cleveland Trust Co.

(NICHOLS, J, of the Seventh District sitting by designation in the Eighth District for KOVACHY, J.)

## OPINION

By SKEEL, J:

This appeal on questions of law and fact comes to this Court from a judgment of the common pleas court of Cuyahoga County, removing the defendant, George A. Bryant from the voting committee provided for under provisions of the Sarah and Samuel Austin Trusts, the court finding by its judgment that there was a conflict of interests.

In 1930, Samuel and Sarah Austin each created an inter vivos trust appointing The Cleveland Trust Company trustee to carry out its purposes. The primary assets of each trust was and is stock, both common and preferred, of The Austin Company. The Austin Company was incorporated in 1904 by Samuel Austin in the development of his construction business. From the very beginning, the stock of the Company was held within The Austin Family and The Austin Company. It is what is known as a closed corporation. None of its stock has ever been sold on the open market and when issued to officers and employees other than members of the family, the right to repurchase such stock was provided for in most cases by contract, in the event the stockholder-employee left the services of the Company.

The record shows that the privilege of purchasing stock by officers and employees was inaugurated by Samuel Austin in 1916 when the number of outstanding shares was increased 811 to 1511. From that time until 1936, the number of employee shareholders was slightly increased. After the death of Samuel Austin and while his son, Wilbert J. Austin, was President, the stock incentive plan was increased so that at the time of his death in 1940 there were twenty-six shareholders. The defendant, Mr. Bryant, became General Manager in 1934 and President in late 1940 and has held those offices to the date of this hearing. During this period, the number of employee stockholders has been greatly increased and the evidence shows that the stockholder incentive plan was the basis of such increase.

Mr. George A. Bryant became associated with Samuel Austin as an employee of The Austin Company in 1913. His progress was rapid. He was permitted to become a stockholder in 1919, a member of the Board of Directors in 1922. Vice-President in 1924. Before the death of Samuel Austin, which occurred in 1936, Mr. Bryant became General Manager when Wilbert J. Austin was elected President. He became President late in 1940 at which time he and his wife owned together 2711 shares of Austin Company stock or about 18% of the outstanding common stock of the Company. At the time of trial, Mr. Bryant's percentage holding of the outstanding common stock was approximately the same. He then owned 18,848 shares. There were outstanding almost 100,000 shares.

The progress of the Company under the leadership of Mr. Bryant has been phenomenal. Between 1940 and 1950, the total construction work and services of the Company increased more than one hundred per cent a year. The dividend rate increased from $8.00 in 1939 to $16.00 in 1940 to $26.00 a share in 1941 and $21.00 a share in 1951, after the stock had been split four for one in 1948, which means the dividend of 1951 would have been $84.00 per share adjusted to share holdings before the stock split.

Due to the unusual prosperity of the Company, the income and value of the trust shares has greatly increased although the relative percentage of such holdings to the total outstanding common stock has been reduced from about sixteen per cent to about ten per cent   This resulted from waivers granted to new issues made available to officers and employees under the incentive plan, from sales of some of the stock held in the trusts and some distribution to beneficiaries.

The basis of the incentive plan is that the business of the Company, being largely personal service in character, relies for its progress on the loyalty of many professional employees, engineers, district superintendents and the like.   Such a plan makes the employee shareholder conscious of his personal interest in the success of the Company.   The record shows that in the late 40's, Mr. Bryant, defendant herein, tried to procure options on all outstanding stock of non-productive shareholders, including the holdings of The Austin Trusts to make it available to key people in the Company.   In fact, the following statement of George Karch, Trust Officer of the Trustee, is in the evidence without objection which was:

"Mr. Bryant said that there are about eight companies now in the engineering business which were started by former Austin employees and he feels very strongly about tying in key men with the Company. He is quite strongly of the opinion that eventually all the stock should be owned by the active men in the Company."

It was unquestionably the policy of the management of The Austin Company to develop their incentive plan of employee stock ownership to the fullest extent possible but it is also true that all attempts to carry out such policies were through legitimate corporate procedures, through stockholder's meetings and directors resolutions.

The trust agreements recognized the policy that management should be left in the hands of those engaged in directing and prosecuting the company's business.   Until these trust agreements were entered into, there was no immediate prospect that shares of stock would come into the possession of non-productive shareholders, that is until at least the captive period of twenty-five years of the recapture contracts should run out on the stock held by some officers and employees.

The trust agreements as first executed provided that the settlors were to vote the Austin Stock held in the trust until the end of their lives and the Sarah Austin Trust provided that upon her death, if she predeceased her husband, he was to vote The Austin Company Stock in her trust until his death.   The amendments to the trust agreements of February 2 and 3, 1933, further restricted the right of the trustee to vote the Austin Company stock held in the trusts.   The amendment to the Sarah Austin Trust was as follows:

"After my decease, if my husband, Samuel Austin, survives me, I direct that, as long as the stock of The Austin Company, or such company as may succeed it by way of reorganization or merger, shall be held as part of the trust estate, the voting rights upon such stock shall be exercised by my husband, Samuel Austin, and from and after his death, by my son, Wilbert J. Austin, and William B. Stewart, but if they shall disagree as to the exercise of such rights, then I direct that the voting

rights upon such stock shall be exercised by any two of Wilbert J. Austin, William B. Stewart and The Cleveland Trust Company, the Trustee hereunder. Upon the decease or incapacity of either said Wilbert J. Austin or William B. Stewart, then the surviving one or the one who is not incapacitated, together with the Trustee, shall select the successor to the one deceased or incapacitated, and such successor shall then, in his stead, exercise such voting rights under the same conditions as are herein expressed concerning the exercise of voting rights by the said Wilbert J. Austin and William B. Stewart. The successor or successors of Wilbert J. Austin and William B. Stewart, in the exercise of such voting rights, shall in their turn be empowered, in event of the death or incapacity of the other one exercising voting rights, to choose his successor in the manner hereinbefore set forth with reference to the successors of Wilbert J. Austin and William B Stewart."

The Samuel Austin amendment of February 3, 1933 was exactly the same with regard to the voting rights of The Austin Company stock in his trust after his death. So it was provided that his son and President of the Company and William B. Stewart, General Counsel, both a part of top management, were to exercise the voting rights of the trust stock with specific provision for the choice of successors in case of the death or disability of a member of the voting committee. The successor to take the place of a member of the voting committee because of death or disability was by the choice of the remaining member and the trustee. So it is clearly provided that the settlors of these trusts in a direct and positive way made it impossible for the trustee alone to vote The Austin Company stock held in the trust. Such fact, with the persons designated by them as the voting committee at its inception, shows that the corporate business was their first consideration and that it was their intent that the trusts would best be served by the success of the Company free from abortive attempts of trust beneficiaries to benefit the trust momentarily at the expense of sound business policy in the operation of the business. The disposition of The Austin Company stock to the respective trusts was the first large block of stock to be transferred to non-productive owners and the voting committee was without doubt created to restrict the voting rights to those active in the affairs of the Company.

In addition to the creation of the voting committee by amendment, the provisions of the Trust agreement with regard to the powers of the trustee other than the right to vote the stock is important in considering the issues in this action. The trustee was vested with very broad powers to manage, invest, sell and otherwise deal with the property in the trust, with some minor limitations in using principal for support to beneficiaries in some cases. But the right to sell trust assets was in the exclusive control of the trustee. The provision of the agreement is as follows:

"To sell, lease, transfer or exchange all or any part of said property and all property that may hereafter from time to time be substituted therefor or added thereto, at such prices and upon such terms and conditions and in such manner as it may deem best, * * *"

The character of the voting committee is not that of a "voting trust" as provided for by §1701.39 R. C., and is free from the restrictions

of that section. Whether or not the provisions of §1701.59 R. C. are applicable is not so clear although no issue is presented on that question. It will be assumed, therefore that the apportionment of the voting committee under an inter vivos trust agreement, delegating to the committee the voting rights of stock held in trust after the death of the settlor, the obligation of the voting committee would be to act as a fiduciary in the interests of the trust estate **as a shareholder** in The Austin Company. It is difficult to see how such a restriction, if it be one, could require any different approach to the motivating reasons for voting the stock than the duty of any other stockholder seeking to promote the success of the corporation because only as the corporation succeeds does the trust benefit.

The voting committee at the time this action was commenced was the defendant, George A. Bryant, and one of the plaintiffs, Herbert R. Whiting, who is also counsel appearing in the case for the plaintiffs. Under the provisions of the amended trust agreements of October 2 and 3, 1938, upon the death of Wilbert J. Austin, the defendant, George A. Bryant, was chosen by William B. Stewart and the trustee to take the place of Wilbert J. Austin. After the death of William B. Stewart in 1947, the survivor, George A. Bryant and the trustee, named Herbert R. Whiting to succeed Mr. Stewart. So that the voting committee as now constituted was appointed in the manner provided by the amended trust agreement.

The plaintiffs seek to remove George A. Bryant from the voting committee, alleging that he has been guilty of fraud, bad faith and antagonism in opposing the interests of the beneficiaries, self-dealing, attempting to purchase the trust stock and divided loyalty by reason of his office as President of The Austin Company. It is claimed that there is a conflict of interest in being President of the Company and at the same time a member of the voting committee to vote the trust stock in The Austin Company.

The manner in which lack of loyalty, antagonism to the trust beneficiaries' interests and acting in bad faith is exemplified according to the claims of the plaintiffs is—first, because of the defendant's attempt to purchase The Austin Company stock in the trusts; second, because he prevented a nominee of the plaintiff, Whiting, from becoming a member of the Board of Directors, third, refusing to divulge material facts when dealing with the Austin trusts beneficiaries regarding his plans for The Austin Company, and seeking to profit himself at their (the beneficiaries) expense.

There is no evidence in this record to support any of these claims. Much of what has been detailed by the plaintiffs had its beginning before Mr. Bryant became a member of the voting committee. What took place is to be found on the face of the corporation records and in correspondence found in the files of the Company, much of such evidence having been written to preserve what had been said verbally at some conference or in a telephone conversation. There is not the slightest attempt to conceal company activities. All of the activities of the defendant have been prosecuted in the interest of The Austin Company and from whose efforts the trust and its beneficiaries have received sub-

254

stantial benefits by the increased value of the trust assets or res and dividends paid.

The claim of the plaintiffs as above stated is that there is a conflict of interest of the defendant preventing him from acting freely without prejudice to the trusts as a member of the voting committee because he is both President of The Austin Company and also a member of such voting committee. It is the contention of the plaintiff that the interests of those two offices are in conflict. That as President he must act in the best interests of the Company and in voting the stock of The Austin Trusts, he should serve the best interests of the trust whereby the conflict arises. Such a claim is not well taken. The duty of a stockholder is to see to it that the company is well managed. In accomplishing this purpose, he must exercise his best judgment and discretion in dealing with company policy in voting his stock. A stockholder can have no other interest than as just defined. We find no conflict by virtue of the fact that the defendant holds both the offices of President and General Manager of The Austin Company and is at the same time a member of the voting committee. The interest of one is the same as the other.

This conclusion is strongly supported by the fact that the settlors directed who should vote the stock in their trusts and how the members of the voting committee should be determined. The settlors did not conceive of a conflict as resulting from the same person, who was President of The Austin Company, also acting on the voting committee, to vote The Austin Company stock transferred by them into their respective trusts. One of the persons who was nominated by the amended trust agreement as a member of the voting committee was the then President (the settlor's son), of The Austin Company. The other appointment made by the trust agreement was W. B. Stewart, General Counsel for the Company. This defendant was selected to succed Wilbert Austin upon the death of the latter, such appointment being made in the manner directed by the settlors. He also succeeded, by the election of the Board of Directors, as President of the Company, such office being left vacant by the son's death. We know of no case which holds that the settlors may not select by appointment in a trust agreement those who are to carry out its provisions. There can be no conflict when the wishes of the settlors are carried out in complete detail.

Finally, it is claimed that the acts of the defendant in attempting to purchase or at least suggesting that it would be to the best interests of The Austin Company to purchase the trust held stock for use in further developing the incentive plan of the Company, was evidence of a conflict of interests or divided loyalty. As a matter of fact, there is no relationship between attempting to extend the incentive plan by the purchase, or the offer to purchase, or suggesting the purchase of the stock of non-productive owners including The Austin Stock owned by the trusts and the duties of a member of the voting committee. Whether the trustee will exercise its power to sell any of The Austin Company Stock held in the trusts is completely controlled by it in the exercise of its sound discretion.

Here the defendant was investigating the advisability of carrying out a company policy of stock ownership restricted as far as possible

to active officers and employees. Such action does not evidence bad faith or divided loyalty in any way affecting a member of the voting committee of stock held by a trust in the company where the only act of the person charged with bad faith toward accomplishing such purpose was to express the belief that to do so would be for the best interests of the company. Any evidence of bad faith, under the circumstances, is completely negatived when such officer at the same time, and with all the vigor at his command, strives to make the stock more valuable. Generally one acting with fraudulent intent, who has the power to do so, would strive to temporarily depress the value of property he thinks necessary to purchase.

Whether it would be to the best interests of the trust to sell such stock would basically depend upon the consideration to be paid for it which is a subject solely within the powers of the trustee of the Austin Trusts. It must be true that the "valuable and profitable property interests in The Austin Company" held by the trust would not be disposed of by the trustee for less than it is worth. In all events, neither Mr. Bryant, as President, of the Austin Company, nor as a member of the voting committee, can in any way compel the trustee to sacrifice the trusts' interests in its Austin Company Stock. If there be a conflict here, it is the inconsistency in admitting that the defendant, by his unusual ability in managing the Company, has thereby materially increased the value of the trust investment and then to claim that his methods in accomplishing such results created a conflict of interests which would require his removal from the voting committee. The defendant has no power to take from the trust the right to continue to enjoy the fruits of what he and those associated with him have built. What the future holds for continued success is a matter of pure conjecture founded on many variables beyond the control of any single individual and supported only by a sound belief in the stability of our economy and industrial progress.

The removal of a trustee by a court in the exercise of its equitable jurisdiction from duties imposed upon him at the direction of the settlors, his selection for the office being as directed by the settlors, is a drastic action and such action should be taken only where intervention is necessary to protect the trust's assets. The case of Ingalls v. Ingalls, 59 So. 2nd, 898 (Alabama), was an action in which the trustee displeased one of two contestants for control of a corporation by its vote of the stock of such corporation held in trust. The action was to remove the trustee. In refusing to do so, the court said as reported in the fourth headnote:

"The removal of a trustee is a drastic action which should only be taken when the estate is actually endangered and intervention is necessary to save trust property."

In the instant case, the only duty of the defendant as a member of the voting committee is to vote the trust held stock with or in conjunction with the other member of such committee and if the members of the committee cannot agree, then the trustee of the trusts has the power and duty to resolve how the stock shall be voted.

The power of the defendant, Bryant, over the property of the trusts is so far removed from the possibility of doing harm under the circum-

stances to the trust property that it would constitute an abuse of discretion to enter a decree for his removal.

We hold that the defendant is entitled to a decree dismissing the petition of the plaintiffs at their costs.

HURD, J, NICHOLS, J, concur.