OPINION
{¶ 1} This timely appeal comes for consideration upon the record in the probate court, Appellants' brief, and their oral argument before this Court. The prosecutor has filed a notice of non-participation in this case. Thus, no brief has been filed on behalf of the probate court.
 {¶ 2} Appellants, National City Bank and Thomas Hollern, appeal the judgment of the Mahoning County Court of Common Pleas, Probate Division, to remove National City Bank as a Trustee of the Walter E. Watson Trust and Thomas Hollern as a member of the Trust's Income Distribution-Appointing Committee. Appellants likewise appeal the probate court's judgment overruling applications for the approval of Committee members. In addition, Appellants claim the probate court abused its discretion when it ordered the Bank to pay the fees of the court appointed investigator. Finally, Appellants challenge the probate court's judgment ordering the disgorgement of previously approved fees and vacating previously approved accounts of the Bank.
 {¶ 3} Pursuant to R.C. 2109.24, a trial court may only remove a fiduciary for habitual drunkenness, neglect of duty, incompetency, or fraudulent conduct, because the interest of the trust demands it, or for any other cause authorized by law. Because none of these factors was established through the lengthy investigation of the probate court, the probate court abused its discretion by removing the Bank as Trustee and Hollern as a member of the Committee. It was also an abuse of discretion to overrule the application to approve the appointment of Eugenia Atkinson as the record supports granting the application. Furthermore, the probate court lacked the discretion to order the Bank to pay the fees of the court appointed investigator pursuant to the clear language of R.C. 1111.28 which requires that either the party requesting the investigation or the trust itself be charged for the investigation. It likewise abused its discretion ordering the Bank to disgorge previously approved fees and vacating previously approved accounts.
 {¶ 4} Accordingly, the judgment of the probate court is reversed in part and modified in part as follows: the judgment of the Common Pleas Court, Probate Division, Mahoning County, Ohio, is reversed in part and modified in part as follows: 1) the probate court's order removing the National City Bank as Trustee and Thomas Hollern from the Income Distribution/Appointing Committee is reversed and National City Bank and Thomas Hollern are both reinstated to their positions; 2) the probate court's order overruling the motion to approve the appointment of Eugenia Atkinson as a member of the Income Distribution/Appointing Committee is reversed and the motion approving Eugenia Atkinson as a member is granted; 3) the probate court's order that the fees of Attorney John Juhasz as the court appointed investigator be paid by National City Bank is reversed and modified to be paid from the Trust; 4) the probate court's order directing National City Bank to disgorge previously approved fees and vacating previously approved accounts is reversed and the previously approved accounts of National City Bank are reinstated; and, 5) the probate court's order overruling the application to appoint Joseph S. Nohra need not be addressed as Thomas Hollern and Eugenia Atkinson comprise a quorum of the Income Distribution/Appointing Committee which can make distributions and move for appointment of a third member.
 Facts {¶ 5} On March 15, 1999, the probate court, sua sponte and pursuant to R.C. 1111.28, appointed Juhasz to investigate the affairs and management of the trust company concerning the Trust. In the same order, the probate court withheld approval of the pending motion to appoint Atkinson as a member of the Committee operating under the Trust until Juhasz' investigation was completed. At the time, the Committee, charged with the duty to disburse funds to charities from the Trust, only had two members. Three were required by the terms of the Trust. Two members constitute a quorum.
 {¶ 6} On April 26, 1999, Juhasz filed his initial report. In that report, Juhasz addressed several issues including: 1) the activities of the Committee; 2) Trustee compensation; 3) compliance with the terms of the Trust; and, 4) the Bank as Successor Trustee. In addition, Juhasz suggested several ways to improve the operation of the Trust. In conclusion, Juhasz stated that "there are areas that merit inquiry, though the breaches, if any, by the appointing committee are more in form than in substance."
 {¶ 7} Because there had been no action taken by the probate court for over two years after Juhasz' report was filed, on January 17, 2002, Hollern and Attorney John Zimmerman, the two remaining members of the Committee, moved the probate court to reconsider approving the appointment of Atkinson as the third member. In that motion, the applicants claimed that, since the filing of Juhasz' report, both the Trustee and the Committee attempted to address the concerns of Juhasz as reflected in the minutes attached to their motion.
 {¶ 8} On September 20, 2002, the probate court, once again upon its own motion, ordered a supplemental investigation to be conducted by Juhasz. The probate court explained that further inquiry was necessary to resolve pending matters, issues raised by the initial report, and new issues raised by subsequent circumstances. The probate court then noted that an adequate response was never given to the initial report by either the Trustee or the Committee.
 {¶ 9} Finally, the probate court stated it was compelled to join the office of the Attorney General. More specifically, the probate court explained that since the filing of the initial report, Zimmerman had tendered an Affidavit of Resignation from the Practice of Law to the Ohio Supreme Court. A formal complaint had been filed and the matter was then pending before the Board of Commissioners. The probate court concluded that the allegations in the complaint against Zimmerman could have touched upon his participation as a member of the Committee for the Trust. Therefore, an additional investigation was required. The probate court then ordered Juhasz to supplement his initial report.
 {¶ 10} On September 28, 2002, Hollern filed an Emergency Motion for Reconsideration of the Application of Eugenia Atkinson as a Member of the Committee, as well as an Emergency Application for Appointment of Joseph S. Nohra as a third member of the Committee. The basis for the motion was that, in order for the Committee to make a distribution, there must be a quorum of at least two members. Because Zimmerman was no longer a member of the Committee, there was only one remaining member. Since there could never be a quorum without a newly appointed Committee member, the Committee's ability to distribute funds was frozen. As a result, Hollern asserted substantial tax penalties would be imminent.
 {¶ 11} A hearing was conducted on October 3, 2002, so that the probate court could hold a status conference on the matter and hear arguments regarding Hollern's motion. On October 11, 2002, the probate court denied the motion but then ordered that the Charitable Law Section of the Office of the Ohio Attorney General be appointed as an interim second member of the Committee. Attorney Monica Moloney, from the AG's office, was to cooperate with Hollern in administering the Trust and ensuring that sufficient distributions were made so that the administration of the Trust complied with all legal requirements during the pendency of Juhasz' continued investigation.
 {¶ 12} On December 16, 2002, Juhasz filed his amended report. Although the amended report is virtually identical to the original in most aspects, Juhasz made slight changes with regards to the Committee in light of the fact that Zimmerman was no longer a member of the Committee. Juhasz concluded Zimmerman's disciplinary issues did not involve the Trust. A hearing was conducted on April 3, 2003, regarding the status of the Trust and removal of the Trustee. That same day, the Trustee filed its response to Juhasz' amended report.
 {¶ 13} The probate court heard the parties' testimony and took the matter under advisement. On August 7, 2003, the probate court removed both the Bank and Hollern from their duties with respect to the Trust in addition to vacating several accounts previously filed by the Bank. The probate court also overruled the motion seeking the appointment of Atkinson and Nohra to the Committee. Subsequently, Juhasz submitted a request for fees in the amount of $2,628.40. The probate court approved fees in the amount of $2,400 and ordered that the Bank pay those fees with its own funds. Finally, on August 12, 2003, the probate court filed an amended judgment entry vacating an additional account. It is from these three judgment entries that Appellants now appeal.
 {¶ 14} As their first of two assignments of error, Appellants' allege:
 {¶ 15} "The probate court abused its discretion when it removed National City Bank as trustee of the Walter E. Watson Trust and Thomas R. Hollern as a member of the Trust's Appointing Committee, overruled applications for the approval Appointing Committee members, ordered disgorgement of previously approved fees and vacated previously approved accounts, in its Judgment Entries and Orders of August 7, 2003 and August 12, 2003."
 {¶ 16} Although raised in one assignment of error, Appellants contend the probate court abused its discretion by: 1) removing the Bank and Hollern; 2) overruling approval of Atkinson and Nohra as Committee members; and, 3) ordering previously approved fees disgorged and vacating previously approved accounts. We will address each in turn.
 Standard of Review {¶ 17} Pursuant to the relevant portion of R.C. 2109.24:
 {¶ 18} "The court may remove any such fiduciary, after giving the fiduciary not less than ten days' notice, for habitual drunkenness, neglect of duty, incompetency, or fraudulent conduct, because the interest of the trust demands it, or for any other cause authorized by law."
 {¶ 19} The removal of a fiduciary under R.C. 2109.24 is discretionary with the court, and a reviewing court will only reverse the probate court's judgment for an abuse of discretion.In re Estate of Jarvis (1980), 67 Ohio App.2d 94, syllabus. An abuse of discretion connotes more than an error of law or judgment, as it implies that the court's attitude is unreasonable, arbitrary or unconscionable. See In re Estate ofClapsaddle (1992), 79 Ohio App.3d 747.
 Removal of Trustee {¶ 20} R.C. 2109.24 lists several bases upon which a fiduciary may be removed, and further provides that the court may order removal "because the interest of the trust demands it, or for any other cause authorized by law." The statute additionally states that "no trustee appointed under a will shall be removed upon such written application [for removal] unless for a good cause." Courts construing this provision have concluded that applicants seeking removal of a trustee appointed by the settlor must establish by clear and convincing evidence that removal is required to protect the trust's assets.
 {¶ 21} In Manchester v. Cleveland Trust Co. (1960), 84 Ohio L. Abs. 321, 328-329, the court cited Whiting v. Bryant (1956),102 Ohio App. 508, 516, for the justification underlying this standard:
 {¶ 22} "`The removal of a trustee by a court in the exercise of its equitable jurisdiction from duties imposed upon him at the direction of the settlors, his selection for the [sic] being as directed by the settlors, is a drastic action, and such action should be taken only where intervention is necessary to protect the trusts' [sic] assets.
 {¶ 23} "`The court is less ready to remove a trustee who was named by the settlor than it is to remove a trustee appointed by the court or by a third person in the exercise of a power to appoint trustees.'" Id. See, also, In re Estate of Bost
(1983), 10 Ohio App.3d 147, 149.
 {¶ 24} As the Eleventh District pointed out in In re: TrustUnder Will of Gabriel (June 14, 1996), 11th Dist. No. 95-L-063:
 {¶ 25} "Both Whiting and Manchester involved inter vivos trusts. However, in In re Estate of Winograd (1989),65 Ohio App.3d 76, 81, the court applied the rule that the removal of a trustee is only proper where it is necessary to save the trust property in an action involving a testamentary trust.
 {¶ 26} "R.C. 2109.24 clearly indicates that the removal of a trustee appointed under a will is to be ordered only upon a greater showing of cause than would be sufficient with other fiduciaries. Under Whiting, Manchester, Bost andWinograd, that showing is by clear and convincing evidence that removal is required to protect the trust property." Id. at 4.
 {¶ 27} The present case involves a Testamentary Trust where the Trustee was specifically chosen by the settlor. Thus, caselaw dictates that a stricter standard should be applied to the removal of a Trustee in such a situation.
 {¶ 28} Here, the probate court ordered the Bank as Trustee and Hollern as a member of the Committee, to appear at a hearing on April 4, 2003 to show cause why they should not be removed as Trustees. At the beginning of the hearing, when Moloney was asked if she had any comments regarding this matter, she was apparently aware of this heightened standard, as she testified:
 {¶ 29} "Your honor, we have reviewed the report of the investigator and the response of counsel for National City. And there is nothing in the investigator's report that would cause the Attorney General to advocate for either the removal of National City or any member of the Distribution Committee at this point.
 {¶ 30} "We believe that there has been or there have been efforts to respond to some of the concerns of the investigator, and those efforts should be commended. And we also recognize that there should be considerable deference given to the intention of the grantor in naming of the trustee and the method of appointing members of the Distribution Committee. I realize that there have been changes by previous Court action in how that was done.
 {¶ 31} "But, nevertheless, that being the case, we would think that, absent some serious wrongdoing or breaches of fiduciary duty, the Attorney General would not advocate the removal at this point."
 {¶ 32} After Moloney testified, several of the probate court's and the investigator's concerns regarding the administration of the Trust were discussed. Although the probate court touches on many of these issues in its judgment entry, it primarily focuses on the issue of Trustee compensation as the basis for removing the Bank and Hollern. This is evident from the probate court's statement:
 {¶ 33} "While the Court may be privileged to forgive National City Bank's foregoing actions as mere blunders in its execution of this Trust, it cannot be so forgiving of its violations of the Trust's limitations upon its compensation."
 {¶ 34} Accordingly, our review is focused on whether the probate court abused its discretion when removing Hollern and the Bank based upon the taking of fees not specifically permitted by the terms of the Trust.
 Compensation of Trustee {¶ 35} In its judgment entry, the probate court explains that the Trust allows for the Trustee to collect as compensation, 5% of the income of the Trust estate. The probate court further explains that the Trustee was impermissibly collecting compensation in excess of this amount.
 {¶ 36} "The Court finds National City Bank's taking excessive fees to be unconscionable as a deprivation of income which the Appointing Committee could otherwise designate for charitable purposes. Equally, the Court finds National City Bank's conduct in submitting fee requests, knowing that the Trust document provides a fixed fee of 5% income, to be in flagrant violation of the express language used by the Grantor. The court is offended that National City Bank would stress its reliance upon the `plain language' of the trust, to overcome any negative inferences to be drawn from the Investigator's Reports, while ignoring the Trust's obvious limitation upon the Trustee's fees. Such conduct is a fraud upon the court for which disgorgement must additionally be ordered.
 {¶ 37} "To note, as National City Bank briefly does, that the Investigator only generally comments regarding its compensation `* * * that this Court approved all fees taken and all accounts * * *' does not answer the Court's inquiry. The Court is responsible for overseeing literally hundreds of trusts and documents, each with particular nuances of language. The Court is entitled to rely upon the fiduciaries it appoints as trustees to provide `true' and `accurate' accounts, consistent with the language of each such document and, importantly, consistent with their statutory duties, as well as their oaths and acceptance of such office. Where as in the instant case, it is found that a trustee has violated such an important trust provision, it must be cited to answer and disgorged of its excessive fees, which are both an unjust enrichment to it and an unjust denial to the charitable beneficiaries of the benefits of Mr. Watson's intended philanthropy."
 {¶ 38} The probate court went on to explain how Hollern, as president of the Bank, was likewise culpable for the impermissible taking of excess compensation from the Trust. The probate court then ordered Hollern to be removed from the Committee.
 {¶ 39} At the hearing, Juhasz testified that he was unable to go back in time and accurately calculate how much funds were available. Therefore, he was unable to determine whether the Trustee compensation was appropriate or not. Juhasz then commented, "But of course, accounts have been filed periodicallywith this Court, and as far as I'm aware, they've beenapproved." (Emphasis added).
 {¶ 40} The Bank concurred with Juhasz explaining,
 {¶ 41} "Yes, Your Honor. There were no fees beyond those approved by this Court that have been taken at any time. On an annual basis the application for fees were made in accordance with this Court's local schedule, and those fees were approved."
 {¶ 42} The probate court then inquired why the local schedule should be followed if the Trust document says five percent of income. In response the Bank explained,
 {¶ 43} "Well, Your Honor, the document does say five percent of income. The document is totally silent with respect to the principal. And a determination was made some time ago that the most appropriate thing to do was to comply with the Court'slocal schedule and to apply for fees on that basis. And that's precisely what has been done over the years. (Emphasis added).
 {¶ 44} * * *
 {¶ 45} "I should point out to the Court also that in January of this year, due to the happening of a number of events, National City Bank looked at this account and I believe another, certainly, and reimbursed all the fees that had been taken over time, even though they were approved fees, just made a management decision to do that. And that took place in January of this year, reimbursed the fees over and above anything that would be other than five percent of the income, if I'm correct."
 {¶ 46} After the Bank's testimony, the court turned to Moloney who commented,
 {¶ 47} "Your Honor, I was concerned with what Mr. Thomas was saying about — I did not understand until now that the fees that were being charged were different from what was in the trust document. We think that the trust document would control, unlessthere was some application to the Court and approval of adifferent schedule of fees. However, with the action that the trustee has taken to reimburse fees in excess of what have been taken, I'm perfectly satisfied with that." (Emphasis added).
 {¶ 48} After Moloney was finished testifying, the probate court questioned Hollern regarding why the excess fees were only taken for the previous four years. Hollern responded:
 {¶ 49} "I do have an explanation for that, and my explanation would be that the Court may recall at that point in time the bank was in front of the Court over some significant fee issues, and there's no question in my mind those were significant fee issues. The determination was made that we would follow the Court-approved fee schedule.
 {¶ 50} "The error that occurred was that we applied the court-approved fee schedule to all of our accounts, including the Watson Foundation, even though the trust document itself called for other fee consideration. But we were trying to be very careful about fees at that point in time."
 {¶ 51} Finally, Juhasz concluded the testimony by explaining that it would be in the spirit of the Trust if the Bank were to replace the fees taken from the income and distribute them to the beneficiaries.
 {¶ 52} We must now determine whether the probate court abused its discretion when removing Hollern and the Bank from their duties based upon the taking of fees not specifically permitted by the terms of the Trust, but instead pursuant to local rules. In doing so, we must determine whether the estate was actually endangered and intervention was necessary to save trust property.Bost at 149.
 {¶ 53} In their brief, Appellants argue that the probate court abused its discretion since the removal of the Bank and Hollern was too drastic an action considering the types of concerns raised. Appellants further argue:
 {¶ 54} "For years, the Mahoning County Probate Court approved the fee applications of National City Bank. It is interesting that while the probate court lets itself off the hook at page 5 of its Opinion by sloughing off its previous approval of fees, and stating that `the court is responsible for overseeing literally hundreds of such trusts and documents.' The court in the same breath accuses National City Bank of violating its `oaths and acceptance' of the office of trustee, and assets that `such conduct is fraud upon the Trust and the Court * * *'
 {¶ 55} "In fact, everything that National City Bank had done over the years was done with court approval. Even if the probate court is now unsatisfied, after the fact, with the method and manner in which National City took its fees, there has been no damage to the Trust because the bank has reimbursed those fees with ten percent interest. The Attorney General's office did not have a problem with the actions of the bank, and really neither did the investigator. There was no fraud, no lying, no cheating. Everything that National City did was in black and white and listed on fee applications and schedules. National City Bank, like the probate court, also administers hundreds of trusts. Why is any perceived miscalculation on the bank's part considered fraud, and the bank accused of `unconscionable' conduct and not taking its `fiduciary role more seriously', but the court gives itself a pass for previously approving the exact actions that it now finds wrongful?"
 {¶ 56} Appellants go on to argue that they should not be ordered to disgorge funds which were already paid back to the Trust, nor should any accounts which were approved by the probate court be vacated.
 {¶ 57} Appellants never claim that taking the additional fees was proper. Appellants do emphasize, however, that as soon as they realized the impropriety of their actions, they remedied the situation. Apparently, this appeased both Juhasz and Moloney. Although their opinions are not binding, the probate court trusted them enough to appoint each of them to their respective positions. With that being said, based upon the record we conclude that the probate court's judgment to remove Hollern and the Bank was an abuse of discretion. Further, we conclude the probate court's judgment to vacate the most recent accounts and to order the Bank to disgorge previously approved fees, which were already paid back to the Trust, is also reversed, and the accountings are reinstated.
 Appointment of Committee Member {¶ 58} We will now proceed to address Appellant's claim that the probate court abused its discretion in failing to approve Eugenia Atkinson and Joseph S. Nohra as members of the Committee without explanation or evidentiary support. In 1999, Hollern and Zimmerman proposed the appointment of Atkinson as a third member of the Committee. However, the court did not act upon that motion because of the "pending initial" investigation of Zimmerman. Subsequent to Zimmerman's resignation, Hollern requested that Nohra be appointed to the Committee. The probate court did not feel that Hollern had the authority to make such a request on his own. Moreover, the probate court explained, since it would be removing Hollern from the Committee, his presence, like Zimmerman's, would also be at an end. The probate court made no further mention of Zimmerman or how his involvement could have affected the Trust.
 {¶ 59} At the hearing, however, Juhasz raised the subject but concluded that Zimmerman had no access to any funds himself. And that "while it was worthwhile and necessary to check that out, that it turned out to be no impropriety there. He had no access to any money." Moloney concurred.
 {¶ 60} Later, the following testimony was given by Myra Vitto, the administrative officer of the trust, with respect to Zimmerman's involvement:
 {¶ 61} "For the record, I normally don't volunteer information, but I believe it's morally and ethically my obligation as an attorney for the Court to state that Mr. Zimmerman was a partner at our law firm. I will tell the Court that our law firm verified with the State of Ohio Supreme Court that Mr. Zimmerman did file his resignation. That resignation was accepted by the Supreme Court with ethical considerations pending. Mr. Zimmerman has also pled guilty to, I believe, a fourth-degree felony.
 {¶ 62} "All the charges involved have nothing to do with this trust. Our firm fully investigated whether there was any involvement with this trust, and our firm found no wrongdoing on Mr. Zimmerman's behalf relative to this trust. Also, it's our understanding that the prosecutor's investigation did not involve anything with this trust."
 {¶ 63} Finally, Vitto expressed her belief that both Atkinson and Nohra would be worthy candidates for the Committee.
 {¶ 64} Because Atkinson was the only candidate who was recommended by two members of the Committee, and because there is no evidence in the record demonstrating that she is not a worthy candidate for the position, the probate court abused its discretion in not approving Appellants' request to appoint her to the Committee. Accordingly, we reverse and modify the probate court's judgment entry to reflect that Hollern be returned to his position and that Atkinson be appointed to the Committee. Because there will now be a quorum, the probate court's order denying the emergency application to approve the appointment of Nohra to the Committee need not be addressed. Hollern and Atkinson can file an application with the probate court for a third member as dictated by the Trust.
 Payment of Investigator's Fees {¶ 65} Appellants' second assignment of error alleges:
 {¶ 66} "The probate court abused its discretion when it ordered National City Bank to pay the fees of the court appointed investigator, in its August 8, 2003 Judgment Entry and Orders."
 {¶ 67} Pursuant to R.C. 1111.28;
 {¶ 68} "(A) Any judge of a court by order of which a trust company is acting in a fiduciary capacity may, upon the judge's own motion or upon the written application of any party interested in the trust estate, appoint suitable persons to investigate the affairs and management of the trust company concerning the trust. The persons who conduct the investigation shall make a sworn report to the court of the investigation. Theexpense of the investigation shall be taxed as costs, eitheragainst the party requesting it or against the assets of thetrust, as the court decrees. The court may examine any officers of the trust company, under oath or affirmation, as to the trust, or as to the affairs and management of the trust company, while the court is considering its appointment. The examination and answers of an authorized officer of a trust company under oath shall be received as the examination and answers of the trust company. The court may compel any of the officers of the trust company to attend these examinations and to answer questions relating to the proceedings." (Emphasis added)
 {¶ 69} It is clear from the statute authorizing the court to appoint an investigator that the probate court was not given the option of assessing costs to the Trustee. The trial court abused its discretion by arbitrarily ordering the Bank to pay the costs of the investigator. Attorney Juhasz' fees shall be paid from the Trust.
 {¶ 70} Accordingly, the judgment of the probate court is reversed in part and modified in part as follows: the judgment of the Common Pleas Court, Probate Division, Mahoning County, Ohio, is reversed in part and modified in part as follows: 1) the probate court's order removing the National City Bank as Trustee and Thomas Hollern from the Income Distribution/Appointing Committee is reversed and National City Bank and Thomas Hollern are both reinstated to their positions; 2) the probate court's order overruling the motion to approve the appointment of Eugenia Atkinson as a member of the Income Distribution/Appointing Committee is reversed and the motion approving Eugenia Atkinson as a member is granted; 3) the probate court's order that the fees of Attorney John Juhasz as the court appointed investigator be paid by National City Bank is reversed and modified to be paid from the Trust; 4) the probate court's order directing National City Bank to disgorge previously approved fees and vacating previously approved accounts is reversed and the previously approved accounts of National City Bank are reinstated; and, 5) the probate court's order overruling the application to appoint Joseph S. Nohra need not be addressed as Thomas Hollern and Eugenia Atkinson comprise a quorum of the Income Distribution/Appointing Committee which can make distributions and move for appointment of a third member.
Donofrio, J., concurs.
Vukovich, J., concurs.