DECISION AND JOURNAL ENTRY
{¶ 1} Appellant, Dorothy Murdock ("Murdock"), appeals from the decision of the Summit County Probate Court. This Court affirms.
 I. {¶ 2} The instant appeal involves a testamentary trust ("the trust") created by the will of Raymond Bernard ("Bernard").
Terms of the Will
 {¶ 3} Bernard died testate on March 23, 2005. His will established the trust. According to the terms of the will, Bernard's property was to be placed in the trust to benefit his mother, Mary. After Mary's death, the trust was to pay the legacies stated in his will, including $50,000 to Murdock. The remainder of the trust was to provide for Susan Rappold ("Rappold"), Bernard's cousin, and would terminate upon her death. The balance of the trust was to be paid to St. Jude's, the church Bernard founded. The will provided that the trust was discretionary and *Page 2 
that the trustee was to disburse amounts to benefit the beneficiary at the trustee's discretion. Bernard's will further appointed John Leopardi ("Leopardi") executor of the will and named Murdock as Trustee and successor executor. The will contained a provision that recognized the potential for a conflict of interest with Murdock's position as a beneficiary and as trustee.
 {¶ 4} Bernard's estate was opened on April 8, 2005 and Leopardi was named executor. The trust was opened on August 26, 2005 and Murdock was named trustee. Leopardi died on December 29, 2005. On January 20, 2006, Murdock was appointed successor executrix of Bernard's estate.
Murdock's Role as St. Jude's Trustee
 {¶ 5} During his lifetime, Bernard was friends with Murdock due to her work at St. Jude's. Based on his friendship with Murdock, Bernard asked her to become a trustee of St. Jude's. She became a trustee on December 8, 2004. Along with Murdock, Bernard and Mary were also trustees, as well as one other trustee who lived out of state.
The Harrison and Ford Properties
 {¶ 6} During his lifetime, Bernard transferred two pieces of property from St. Jude's. On February 7, 2005, Bernard transferred one property, located at 637 E. Ford Ave., Akron, Ohio ("the Ford property"), to Mary and on March 11, 2005, transferred the other property, located at 699 Harrison Ave., Akron, Ohio ("the Harrison property"), to himself. Mary died on March 7, 2005.
St. Jude's Claims
 {¶ 7} On January 13, 2006, St. Jude's filed suit in the Summit County Court of Common Pleas, General Division, against Bernard's and Mary's respective estates to recover the *Page 3 
Ford and Harrison properties. St. Jude's claimed that the transfers Bernard made prior to his death were fraudulent. Murdock authorized the suit as a St. Jude's trustee.
 {¶ 8} On May 16, 2006, a settlement agreement was made in which Bernard's estate and St. Jude's agreed that Bernard's estate would return the Harrison property to St. Jude's. St. Jude's prevailed on the merits in its suit against Mary's estate and the Ford property was returned to St. Jude's.
Attorney Oliver's Claim
 {¶ 9} On October 31, 2005, an attorney for St. Jude's, Attorney Oliver, sued Murdock for non-payment of legal fees. Murdock had retained Attorney Oliver in May of 2005 to keep two men from becoming bishops at St. Jude's and to retrieve the Harrison and Ford properties. On May 2, 2006, the Akron Municipal Court found in favor of the attorney and judgment was entered against Murdock individually and as trustee of the trust in the amount of $1,544.85. Murdock satisfied the judgment with funds from the trust.
Rappold's Motion to Remove Murdock as Trustee
 {¶ 10} On March 29, 2006 Rappold filed a motion in the Summit County Common Pleas, Probate Division, to remove Murdock as trustee. A hearing was held over two days; June 8, 2006 and October 2, 2006. On February 5, 2007, the magistrate found that "the many hats that are worn by [Murdock] prohibit her from acting as a trustee, [carrying] out the purpose of the trust for the benefit of the beneficiary and the contingent beneficiary." Murdock objected to this finding, and on May 30, 2007, a hearing was held. On December 3, 2007, the probate court adopted the magistrate's decision and overruled Murdock's objections. Murdock timely appealed to this Court, raising two assignments of error for our review. On March 17, 2008, *Page 4 
Michael Hendler, as successor trustee, filed a motion to intervene and filed a responsive brief. On April 11, 2008, we granted Hendler's motion over Murdock's objection.
 II. ASSIGNMENT OF ERROR I "THE PROBATE COURT ERRED AND ABUSED ITS DISCRETION WHEN IT REMOVED [MURDOCK] AS TRUSTEE BECAUSE THE PROBATE COURT FOUND A CONFLICT OF INTEREST AND IMPROPERLY CONSTRUED THE TERMS OF THE TRUST IN DEALING WITH THE ALLEGED CONFLICT OF INTEREST."
 ASSIGNMENT OF ERROR II "THE PROBATE COURT ERRED AND ABUSED ITS DISCRETION BY REMOVING [MURDOCK] AS TRUSTEE."
 {¶ 11} In her assignments of error, Murdock contends that the probate court erred and abused its discretion when it removed her as trustee. We do not agree.
 {¶ 12} "The decision whether to remove a trustee lies within the sound discretion of the probate court, and an appellate court will not reverse that decision absent a showing of a clear abuse of that discretion."In re Trust Estate of CNZ Trust, 9th Dist. No. 06CA008940,2007-Ohio-2265 at ¶ 16, citing Natl. City Bank, Dayton v. Peery (Nov. 8, 1995), 2d Dist. No. 15117.
 "An abuse of discretion involves far more than a difference in * * * opinion * * *. The term discretion itself involves the idea of choice, of an exercise of the will, of a determination made between competing considerations. In order to have an `abuse' in reaching such determination, the result must be so palpably and grossly violative of fact and logic that it evidences not the exercise of will but perversity of will, not the exercise of judgment but defiance thereof, not the exercise of reason but rather of passion or bias." State v. Jenkins (1984), 15 Ohio St.3d 164, 222.
 {¶ 13} As trustee of the trust, Murdock was acting in a fiduciary capacity. R.C. 2109.01 defines fiduciary as "any person * * * appointed by and accountable to the probate court and acting in a fiduciary capacity for any person, or charged with duties in relation to any property, interest, trust, or estate for the benefit of another[.]" *Page 5 
 {¶ 14} The removal of a fiduciary is governed by R.C. 2109.24. According to this section, "[t]he court may remove any fiduciary, after giving the fiduciary not less than ten days' notice, for habitual drunkenness, neglect of duty, incompetency, or fraudulent conduct,because the interest of the property, testamentary trust, or estate thatthe fiduciary is responsible for administering demands it, or for any other cause authorized by law." (Emphasis added.) Further, "[c]ourts construing this provision have concluded that applicants seeking removal of a trustee appointed by the settlor must establish by clear and convincing evidence that removal is required to protect the trust's assets." In re the Trust Created Under Item IV of the Last Will andTestament of Watson, 7th Dist. No. 03MA154, 2004-Ohio-7063, at ¶ 20.
 {¶ 15} The probate court found that Murdock's positions as trustee of St. Jude's and trustee of the trust were in conflict and that, due to the conflict of interest, the trust had been harmed and that the interest of the trust demanded her removal. Specifically, the probate court found that "[t]he facts and circumstances in this case rise above the mere existence of a conflict of interest as Murdock has made decisions and taken actions that has not only favored the remainder beneficiary of the Trust, but has also caused assets to be diverted from the Trust directly to the remainder beneficiary." On appeal, Murdock argues that no conflict of interest existed that would require her removal as trustee, and if a conflict existed, it was waived in Bernard's will. She further argues that no harm to the trust was shown.
The Conflict of Interest
 {¶ 16} A conflict of interest is defined as "a real or seeming incompatibility between one's private interests and one's public or fiduciary duties." Black's Law Dictionary (8 Ed.Rev.2004) 319. In the instant case, the probate court listed several reasons for finding that Murdock's position as St. Jude's trustee, the remainder beneficiary of the trust, was incompatible *Page 6 
with her fiduciary duties as trustee of the trust. Specifically, the probate court noted that Murdock had a duty to preserve the assets in Mary's estate, including the Ford property, and that as executor of Bernard's estate, she had a duty to insure that all assets from Mary's estate were transferred to Bernard's estate, her sole beneficiary. Instead, Murdock filed suit on behalf of St. Jude's against Mary's estate, claiming that the transfer of the Ford property was fraudulent. The trial court awarded this property to St. Jude's. The probate court went on to note that Murdock had a duty to preserve the Harrison property for the estate. However, she again acted on behalf of St. Jude's and filed suit against Bernard's estate, alleging a fraudulent transfer. The parties settled this suit and the property was transferred to St. Jude's.
 {¶ 17} After a thorough review of the transcript of the proceedings of the magistrate's hearing held on June 8, 2006 and October 2, 2006 we find that the probate court did not abuse its discretion when it determined that clear and convincing evidence supported a finding that a conflict of interest existed. At the hearing, Murdock verified that she was a trustee for both St. Jude's and for the trust. Murdock testified that she retained an attorney to represent herself as trustee of the estate and retained an attorney to represent St. Jude's. She explained that she was the sole St. Jude's trustee to make this decision. The evidence clearly established that Murdock was the representative party of both the remainder beneficiary, St. Jude's, and the trust. We agree with the probate court in that these positions present a "seeming incompatibility" between Murdock's interest in the trust and her interest as a remainder beneficiary. Id. Accordingly, we find that a conflict of interest existed in Murdock's role as trustee of the trust and trustee of St. Jude's. *Page 7 
 Waiver of the Conflict
 {¶ 18} Murdock argues that Bernard's will anticipated the above conflict. The will contained the following clause:
 "I fully realize after a complete and satisfactory explanation by my Attorney, John A. Leopardi, that the Trustees who are named in this Will may be remaindermen of the Trust herein created, and that there may appear to be, or may actually be, a conflict of interests, but nonetheless, I desire that these facts be disregarded completely and that the herein named Trustees be appointed to serve, and that if at all possible they be appointed to serve in the order herein named."
 {¶ 19} In Huntington National Bank v. Wolfe (1994),99 Ohio App.3d 585, the 10th District Court of Appeals determined that "the mere existence of the conflict, known and anticipated by the settlor, does not disqualify the individual co-trustee from participating in decisions regarding the trust with respect to which, arguably, the individual trustee may have conflicting interests. The only requirement is that, under such circumstances, the individual trustee having conflicting interest exercise the judgment in good faith." Id., at 596. In that case, the trial court noted that there were co-trustees, only one of which had a conflict of interest. The court explained that "even though there appears to be a conflict of interest with respect to one of the co-trustees, a beneficiary must prove that the conflict has resulted in prejudice to the trust, or to the beneficiary in order to be entitled to relief. The inherent conflict of the individual trustee does not disqualify him." Id. Unlike the trust in Wolfe, Murdock was thesole trustee of Bernard's trust, and therefore was the sole decision maker. Notwithstanding, we find that Murdock's conflict of interest prejudiced the trust as well as Rappold.
 {¶ 20} While it is true that the will appears to anticipate that Murdock would face a conflict of interest from her position as a trustee of the will and a trustee of the remainderman, St. Jude's, we find that this clause does not anticipate that Murdock would disregard her fiduciary duties. Fiduciary duty is defined as "[a] duty of utmost good faith, trust, confidence, *Page 8 
and candor owed by a fiduciary * * * to the beneficiary * * *; a duty to act with the highest degree of honesty and loyalty toward another person and in the best interests of the other person." Black's Law Dictionary (8 Ed.Rev.2004) 545. Therefore, Murdock was required to act in the best interest of the trust beneficiary, Rappold. Firestone v.Firestone (1993), 9th Dist. Nos. 15647, 15653, at *2. Further, as a fiduciary, Murdock owed Rappold the highest degree of loyalty. By filing suit on behalf of St. Jude's seeking the return of the Harrison and Ford properties, Murdock was clearly not acting in the best interest of the trust nor was she fulfilling her duty of loyalty to Rappold. Murdock testified at the hearing that she authorized the transfer of the Harrison property from Bernard's estate to St. Jude's, thus removing this property from the trust to the benefit of St. Jude's.
 {¶ 21} We note that Murdock testified at the hearing that she believed that the transfers were not fraudulent, yet she filed suit against Bernard's trust alleging fraudulent transfer. She further explained that she believed that the properties belonged to St. Jude's. The probate court stated that "[i]n essence, in the fraud action, Dorothy Murdock acted as both the Plaintiff ([St. Jude's]) and the Defendant (the Estate of Raymond Bernard; the beneficiary of Mary Bernard's estate; and transferor of trust asset). As the Executrix and Trustee for Raymond Bernard's estate and trust, respectively, Murdock was required to preserve and maintain the Harrison Avenue properties, as well as the Ford Avenue property, as estate and ultimately, trust assets. This she failed to do."
Harm to the Trust
 {¶ 22} Finally, we find that the probate court did not abuse its discretion when it found that Rappold presented clear and convincing evidence that the trust was prejudiced by Murdock's actions.Wolfe, 99 Ohio App.3d at 596. As both plaintiff and defendant of the *Page 9 
fraudulent transfer suit, Murdock testified that she was responsible for retaining an attorney for each side. The record reveals that the Harrison property issue did not go to trial, but rather was settled by agreement of the parties, resulting in a loss of estate property that would have otherwise become a trust asset.
 {¶ 23} The probate court also noted that Murdock improperly paid the judgment for which she was liable to Attorney Oliver with funds from the trust. In that case, Murdock had retained Attorney Oliver to represent St. Jude's against Mary's estate and Bernard's estate regarding the alleged fraudulent transfers of the Harrison and Ford properties. She explained that she was acting as the sole trustee of St. Jude's. Soon thereafter, Murdock fired Attorney Oliver and Attorney Oliver filed suit for unpaid legal fees. Attorney Oliver was awarded judgment and Murdock paid a portion of this judgment from Bernard's trust. On appeal, Murdock concedes that this payment was improper. Murdock contends that because the payment was only $1,544.85 and the trust consisted of assets in excess of one million dollars, that the trust was not prejudiced by this improper payment. However, Murdock does not provide this court with any citation that would support her argument that the amount of the misappropriated funds dictates whether the trust and its beneficiary were prejudiced. See App. R. 16(A)(7). Accordingly, we find that the probate court did not abuse its discretion when it determined that Murdock's actions prejudiced the trust. As such, the probate court did not abuse its discretion when it removed Murdock as trustee. Murdock's two assignments of error are overruled.
 III. {¶ 24} Murdock's assignments of error are overruled and the judgment of the Summit County Probate Court is affirmed.
 Judgment affirmed. *Page 10 
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App. R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App. R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App. R. 30.
Costs taxed to Appellant.
 SLABY, J. CARR, P. J. CONCUR *Page 1